**Marryshaw v. Nationwide Mutual Insurance Co.**

*Ronald J. Mishkin*, for plaintiff.
*Edward H. Hoffner*, for defendant.

WILLIAMS, *S.J.*, December 31, 1979—Merle A. Marryshaw, plaintiff, has filed the instant motion for partial summary judgment in the assumpsit action which she brought against Nationwide Mutual Insurance Company, defendant, upon a policy of No-fault insurance, No. 58B-766-391, issued by defendant. It appears that defendant already has paid hospital bills totalling $11,359 and that the occasion for bringing the action was defendant's refusal to calculate and pay, in addition thereto, no-fault work loss benefits under section 205(c) of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.205(c), which provides that, for a victim who has not previously earned income from work, "probable annual income," absent a showing that it is or would be some other amount, means the average gross income of a production or nonsupervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs. After defendant filed an answer, the deposition of Merle A. Marryshaw was taken. From this, it appears that she was injured on September 9, 1978, her 19th birth-

day, as the result of being struck by a car while she was crossing the highway. At Pocono Mountain High School, she had pursued the academic course and had graduated on June 15, 1978. For a week prior to the accident, she had been enrolled as a full-time student at East Stroudsburg State College majoring in psychology. Merle A. Marryshaw never has been gainfully employed, but during the summer months she helped her parents around the house. At the time of the deposition, she was scheduled for a second operation involving the re-breaking of her leg, in September 1979.

By moving for partial summary judgment, counsel for plaintiff, in effect, request the court to render an interlocutory determination (a) that defendant is generally responsible to plaintiff for work loss benefits under the facts pleaded; and (b) that it is defendant's duty under the act to compute these benefits. Although not specifically provided for, this type of determination has been rendered desirable, if not indispensable, by the distinctive structure of the No-fault Act itself. Whereas the conventional tort action—with relation to damages for future loss of earnings or impairment of earning capacity—requires judgment for a *lump sum* estimated in advance of actual monetary loss,* the No-fault Act requires a *pay-as-you-go* procedure. Section 106(a), 40 P.S. §1009.106(a), provides, in pertinent part:

"Section 106. Payment of claims for no-fault benefits

_____

*See: Frankel v. Heym, 466 F. 2d 1226, 1228, 1229 (3d Cir. 1972).

"(a) In general.—(1) No-fault benefits are payable monthly *as loss accrues*. Loss accrues not when injury occurs, but as allowable expense, work loss, replacement services loss, or survivor's loss *is sustained*. (2) No-fault benefits are overdue if not paid within thirty days *after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained . . .*" (Emphasis supplied.)

Under the act, the obligation to pay compensation progresses by keeping equal pace, in monthly accrual increments, with the developing situation of the victim as it is related to expenses and to physical and mental condition. Where proposed rehabilitative programs are in question, sections 401 through 406, 40 P.S. §1009.401-406, specifically provide for a determinative order to be made by the court upon the factual basis then existing. In a more general sense, analogous procedure is essential whenever dispute arises concerning application of the law to a changing body of facts at intervals during the life of the insurance coverage.

Stated in the most simple terms, defendant disclaims responsibility to plaintiff for work loss because, prior to the accident, she never was gainfully employed and, in the future, when she has recovered sufficiently from her injuries, she plans to continue as a full-time student at East Stroudsburg State College, which might be expected to preclude gainful employment so long as that status continues. This view fails to take into consideration the established principle of Pennsylvania tort law that impairment of earning *capacity* resulting from physical or mental injury caused by an accident is a legitimate element of damages,

and that proof of this element does not depend upon showing that, at some time, the victim was gainfully employed. Accordingly, such damages have been awarded to a three-year-old child: Campbell v. Philadelphia, 252 Pa. 387, 97 Atl. 456 (1916); to minors, each seven years old: Fedorawicz v. Citizens' Electric Illuminating Co., 246 Pa. 141, 92 Atl. 124 (1914); O'Hanlon v. Pittsburgh Railways Co., 256 Pa. 394, 100 Atl. 972 (1917); to an eight-year-old girl, Brzyski v. Schreiber, 314 Pa. 353, 171 Atl. 614 (1934); to a ten-year-old boy: Allen v. Buffalo, R. & P. Ry., 274 Pa. 518, 118 Atl. 490 (1922); and to a high-school student, 18 years old at the time of the accident: Fisher v. Schlegel, 26 Berks 57 (1933), affirmed 315 Pa. 390, 172 Atl. 658 (1934). A case comparable to the instant case in a number of respects may be found in Frankel v. Todd, 260 F. Supp. 772 (E.D. Pa. 1966), reversed in 393 F. 2d 435 (3d Cir. 1968). There, the plaintiff was a 19-year-old student at East Stroudsburg State Teachers College at the time of the accident, May 13, 1961. She sustained fractures of the pelvic bones which resulted in a distortion of the pelvic ring, shifting the right side upward leaving the crest of the right hip one-half inch higher than the left. The deformity was permanent and could not be corrected. Despite seven weeks' hospitalization, plaintiff was able to graduate in normal time. From graduation until the time of trial, she was employed full time as an elementary school teacher. It does not appear in the report that she had been gainfully employed previously thereto. She was able to perform her duties despite the deformity, although it caused her to be slower in getting around and created discomfort in the form of backaches. The district court held that plaintiff had failed to carry the burden of establishing impairment of earning

capacity. On appeal, the circuit court reversed and remanded with directions to grant a new trial. Circuit Judge Kalodner said, 393 F. 2d 438, 439, 440:

"It is settled Pennsylvania law that where there is evidence that a plaintiff has suffered disabling permanent injury, it is a jury question as to whether such injury will 'shorten' his 'economic horizon' and thereby result in a future loss of earning power.

". . .

"The Pennsylvania Supreme Court has ruled, time and again, that the circumstance that a plaintiff's earnings are higher after his injury than before it, is not a bar to recovery of damages for impairment of earning power, where impairment is of disabling effect.

". . .

"It requires no great stretch of the imagination to conclude that in the instant case it might well transpire that the plaintiff will have to give up her teaching employment because of her disabling injuries and that she might be compelled to accept employment at a lesser compensation, and that the jury could have so found. Further, the jury could have justifiably found that at the minimum the plaintiff's opportunities for advancement in the teaching profession have been diminished by her disability."

The partial abolition of tort liability by the No-fault Act has the effect of conferring upon the victim the right to recover compensation directly from the insurer, without regard to fault, for a specified catalogue of "benefits," but preserving to the victim the right to pursue tort liability for any rights to compensation in excess of the limits provided for "benefits." Section 301(a)(4), 40 P.S. §1009.301(a)(4), provides: "A person remains lia-

ble for loss which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act. A person is not liable for loss which is not compensated because of limitations in accordance with subsection (e) of section 202 of this act." Included in the catalogue of "benefits," is "work loss."

Section 202(b), 40 P.S. §1009.202(b), provides:

". . . Work loss, *as defined in section 103* shall be provided: (1) up to a monthly maximum of: (A) one thousand dollars ($1,000) multiplied by a fraction whose numerator is the average per capita income in the Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures, or

"(B) the disclosed amount, in the case of an insured who, prior to the accident resulting in injury, voluntarily discloses his actual monthly earnings to his obligor and agrees in writing with such obligor that such sum shall measure the work loss; and

"(2) up to a total amount of fifteen thousand dollars ($15,000)." (Emphasis supplied.)

Section 103, 40 P.S. §1009.103, contains the definition of *"work loss"*:

"'Work loss' means: (A) loss of gross income of a victim, *as calculated pursuant to the provisions of section 205 of this act*; and (B) reasonable expenses of a victim for hiring a substitute to perform self-employment services, thereby mitigating loss of income, or for hiring special help, thereby enabling a victim to work and mitigate loss of income." (Emphasis supplied.)

Section 205, relating to the calculation of "work loss," deals with three categories of victim: (a) the regularly employed, (b) the seasonally employed,

and (c) the not employed. As to the last category—to which plaintiff Merle A. Marryshaw belongs, section 205(c), 40 P.S. §1009.205(c), provides:

"(c) Not employed.—The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

"(1) determining his *probable weekly income* by dividing his *probable annual income* by fifty-two; and

"(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period." (Emphasis supplied.)

For the victim who has not previously earned income from work, section 205(d), 40 P.S. §1009.205(d), provides:

"'Probable annual income' means, *absent a showing that it is or would be some other amount*, the following:

"...

"(C) the average annual gross income of a production or nonsupervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs, for a victim who has not previously earned income from work." (Emphasis supplied.)

The Pennsylvania Insurance Department has published its determinations, both of the monthly maximum payable for work loss and of the probable weekly work loss for unemployed victims, in 9 Pa. Bull. 2674, 2675 (1979):

"Pursuant to the above section of the act [section 202(b)(1)(A), 40 P.S. §1009.202] and 31 Pa. Code

section 66.1-202(b)(1)(A), the Insurance Department has determined that the monthly maximum in (1)(A) above is $996.

"This ratio will be redetermined periodically and will be published in the Pennsylvania Bulletin.

". . .

"The Insurance Department has determined the average annual gross income of a production worker in the private nonfarm economy in Pennsylvania is 52 multiplied by $255 for the calendar year ending December 31, 1978.

"This figure is based upon information provided by the Pennsylvania Department of Labor and Industry. This figure will be redetermined on an annual basis according to the latest available figures and such new dollar figure will be published in the Pennsylvania Bulletin."

In light of the foregoing, it is clear that defendant is generally responsible to plaintiff for work loss, despite the absence of an actual work record to serve as a criterion for loss of past or future earnings.

We disagree with counsel for plaintiff in asserting that defendant is subject to the initial duty of calculating and paying compensation for work loss. As we have seen, the No-fault Act provides for the payment of benefits on a month-to-month accrual basis. Section 102(a), quoted supra, requires plaintiff to submit to defendant reasonable proof of the fact and amount of the loss sustained for each monthly accrual period as a prerequisite to the obligation of defendant to pay.

## ORDER

And now, December 31, 1979, it is ordered as follows:

1. The court determines, on the facts presented, that defendant is generally responsible to plaintiff for work loss under the No-fault Act.

2. The obligation of defendant to pay specific sums to plaintiff for work loss will be conditioned upon the submission by plaintiff to defendant of reasonable proof of the fact and amount of loss sustained for each monthly accrual period.