447 A.2d 999

**John G. FREEZE, Jr., Administrator of the Estate of John Goss Freeze, III, Appellant,**

v.

**DONEGAL MUTUAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 7, 1981.

Filed July 9, 1982.

Richard C. Angino, Harrisburg, for appellant.

Laurence T. Himes, Jr., York, for appellee.

Before CERCONE, President Judge, and HESTER, CAVANAUGH, WICKERSHAM, BECK, MONTEMURO and POPOVICH, JJ.

CERCONE, President Judge:

The instant appeal [1] presents us with a question under that embattled statute, the Pennsylvania No-fault Motor

1. This case was originally argued before a panel of this Court. It was ordered reargued before the Court *en banc* because of the importance of the questions presented.

Vehicle Insurance Act.[2]  The operative facts are these.  On January 14, 1977 John G. Freeze, III, was struck and killed by an automobile while sled riding near his home in Wrightsville, York County.  The no-fault insurance coverage on the family automobile was carried by Donegal Mutual Insurance Company (appellee hereinafter); decedent was insured under the policy as a member of the household.  At the time of his death decedent was eleven years old.  Decedent's father, John G. Freeze, Jr., (hereinafter appellant) acting as administrator of his son's estate, requested and received the funeral benefits due under the insurance policy.  Appellant also requested that appellee pay work loss benefits as defined by the No-fault Act.  The latter request was refused.  Appellant then instituted the instant action on behalf of his son's estate in order to recover the work loss benefits.[3]  Appellee filed preliminary objections in the nature of a demurrer asserting that a decedent's estate is not allowed to recover work loss benefits under the Act since such benefits may only be had by the statutorily defined

**2.** Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.* (Supp. 1980–81) hereinafter referred to as the Act or the No-fault Act.

**3.** In his reargument brief appellant asserts the right to "stack" work loss benefits because there were two vehicles insured under the policy.  The lower court did not reach the question (if indeed the question was ever presented to it) because it was precluded from going further once it had sustained the preliminary objections and dismissed the complaint.  Accordingly, we need not address the question ourselves.

On the stacking question *see Wilson v. Keystone Ins. Co.*, 3822 November Term, 1979, (Phila. Co., May 7, 1981).  *Accord, McNemee v. Farmers Insurance Group*, 228 Kan. 211, 612 P.2d 645 (1980); *Petty v. Allstate Ins. Co.*, Minn., 290 N.W.2d 763 (1980); *Wasche v. Milbank Mutual Ins. Co.*, Minn., 268 N.W.2d 913 (1978); *Cooke v. Safeco Ins. Co. of America*, 94 Nev. 745, 587 P.2d 1324 (1978); *Travelers Ins. Co. v. Lopez*, 93 Nev. 463, 567 P.2d 471 (1978); *Carey v. Electric Mut. Liability Ins. Co.*, 500 F.Supp. 1227, 1234 (1980) (Footnote 2).  *Cf., State Farm Mut. Auto. Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978); *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968); *Sones v. Aetna Cas. & Surety Co.*, 270 Pa. Superior Ct. 330, 411 A.2d 552 (1979).  *And see*, Zittrain, *Whose Fault Is No-Fault?: The Pennsylvania No-fault Motor Vehicle Insurance Act*, 41 U.Pitt.L.Rev. 27, 58–67 (1979).

class of "survivors."[4]  Appellee also asserted that work loss benefits are neither due the survivors of a deceased eleven year old who had never worked, nor calculable.  The lower court sustained appellee's demurrer to the complaint's sole cause of action, but *sua sponte* granted appellant leave to amend the complaint to allow appellant to seek survivors loss benefits and reimbursement for funeral expenses.[5] Rather than amend the complaint appellant chose to file this appeal.  By agreement of counsel, the original argument in this case was stayed pending our decision of *Heffner v. Allstate Ins. Co.*, 265 Pa.Superior Ct. 181, 401 A.2d 1160 (1979).

## I.

█  Before addressing the merits of the case, we must first surmount a crucial procedural hurdle.  Because even an explicit agreement of the parties will not vest jurisdiction in a court where it otherwise would not exist, *T. C. R. Realty, Inc. v. Cox*, 472 Pa. 331, 372 A.2d 721 (1977); *Giannini v. Foy*, 279 Pa.Superior Ct. 553, 421 A.2d 338 (1980), we may raise *sua sponte* the issue of the appealability of a trial court's order.  *Giannini v. Foy, supra; Davidyan v. Davidyan*, 229 Pa.Superior Ct. 495, 327 A.2d 139 (1974).

█  At the time the instant appeal was filed this Court had jurisdiction over "all appeals from final orders of the courts of common pleas. . . ."  Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 742.  In ascertaining whether an order is final, we will look beyond the technical effect of the order and apply practical considerations in light of the order's ramifications.  See *Giannini v. Foy, supra.*  And see *Adoption of G. M.*, 484 Pa. 24, 398 A.2d 642 (1979); *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734

---

**4.**  40 P.S. § 1009.103 defines survivor as "(A) spouse;  or (B) child, parent, brother, sister or relative dependent upon the deceased for support."

**5.**  For the propriety of the court's *sua sponte* grant of leave to amend the complaint see *Delgrosso v. Gruerio*, 255 Pa. Superior Ct. 560, 389 A.2d 119 (1978) and *Keller v. Cook*, 69 York Leg.Rec. 161 (1956).

(1975). Ordinarily, an order which terminates litigation or disposes of the entire case is final, and an order is interlocutory and not final unless it effectively puts the litigant "out of court." *Giannini v. Foy, supra; Adoption of G. M., supra; T. C. R. Realty, Inc. v. Cox, supra; Alessandro v. State Farm Mutual Auto Ins. Co.,* 487 Pa. 274, 409 A.2d 347 (1979); *Ventura v. Skylark Motel, Inc.,* 431 Pa. 459, 246 A.2d 353 (1968).

■ The lower court's order denied the deceased's estate the right to collect work loss benefits under the No-fault Act. Its stated reason for doing so was that appellant, as representative of his son's estate, is essentially a "deceased victim," and only survivors and "victims" can collect basic loss benefits. Thus, as far as work loss benefits are concerned the estate was "out of court," and the litigation of appellant's chosen cause of action for work loss benefits could proceed no further.

■ The order also granted appellant leave, however, to amend the complaint in order to seek survivors loss and funeral expenses. Arguably this *sua sponte* grant of leave to amend the complaint was an interlocutory order. This is so because generally speaking an order which sustains preliminary objections in the nature of a demurrer without dismissing the complaint or entering judgment or otherwise terminating the action between the parties is interlocutory and, therefore, lacks the requisite finality to be an appealable order. *Sullivan v. Philadelphia,* 378 Pa. 648, 107 A.2d 854 (1954). This general rule has been modified, however. If the order in effect, serves to terminate the action between the parties by so restricting the pleader with respect to further amendment of the pleading as to virtually put him out of court on the cause of action he seeks to litigate, it is a definitive and final order, and thus, appealable. *Hudock v. Donegal Mutual Ins. Co.,* 438 Pa. 272, 264 A.2d 668 (1970); *Local No. 163, Int'l Union of Brewery Workers v. Watkins,* 417 Pa. 120, 207 A.2d 776 (1965); *Sullivan v. Philadelphia, supra.*

■ Appellant could have amended the complaint to seek survivors loss benefits—the funeral expenses question was moot at the time of the order since appellee had already reimbursed appellant for them—but this amendment would have altered the cause of action entirely. Appellant sought to litigate the question of whether an estate could recover work loss benefits, not whether recovery of survivors loss benefits is possible. Since this was not a case where appellant sought to recover on more than one cause of action where the court sustained demurrer only as to some of the causes of action advanced, see *Giannini v. Foy, supra,* but rather one where there was but a single cause of action alleged, appellant was "out of court" on his chosen cause of action. Practically speaking, then, the order sustaining appellee's demurrer is final and appealable. Having, then, an appealable order before us we may proceed to the merits of the case.

## II.

Our decision today is controlled by *Allstate Ins. Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980) which sustained this Court's orders in *Heffner v. Allstate Ins. Co., supra,* (suit brought by decedent's widow) and *Pontius v. United States Fidelity and Guaranty Co.,* (order of July 3, 1979, remanding case for disposition below in accord with *Heffner v. Allstate Ins. Co.*) (suit brought by the administration of the deceased's estate).[6]

---

**6.** In *Pontius v. United States Fidelity & Guaranty Co.,* the parties *jointly* petitioned this Court to *reverse* the lower court's order denying work loss benefits to the deceased victim's estate. The reason for the petition was the parties' desire to have the case consolidated on appeal with the *Allstate Ins. Co. v. Heffner.* Judge Wieand's order in *Pontius* read:

NOW, this 3rd day of July, 1979, upon request of counsel for the parties that a summary disposition of the appeal be made consistently with the decision of this court in *Heffner v. Allstate Insurance Company* . . ., which decision is presently the subject of a petition for allowance of appeal to the Supreme Court of Pennsylvania, the judgment of the lower court is hereby reversed and remanded without prejudice to the appellee's right to petition for allowance of appeal to the Supreme Court of Pennsylvania.

■ Appellee would have us overrule our decision in *Heffner v. Allstate Ins. Co.*,—a course which we are neither inclined to pursue nor one which is open to us in view of the Supreme Court's recent decision in *Allstate Ins. Co. v. Heffner*—or that we construe Section 103 of the No-fault Act strictly and thereby limit the recovery of work loss benefits due under the Act to the statutorily defined class of "survivors" contained therein. This same argument was rejected in both this Court and the Supreme Court. Such an interpretation of the Act as advanced by appellee herein, and by Allstate in both *Heffner* cases, would abolish "the right of the deceased victim's estate to recover from a tortfeasor the earnings the deceased victim would have contributed to his estate had he survived." *Heffner v. Allstate Ins. Co.*, 265 Pa.Superior Ct. at 191, 401 A.2d at 1164.[7] In addressing this issue in *Heffner v. Allstate Ins. Co.*, we stated:

... Section 301 ... retains traditional tort liability against third persons for lost earnings to the extent that they exceed the monetary limits established by Section 202(b) of the Act, i.e., work loss benefits up to $1,000 per month and $15,000 total. Therefore, in order to recover damages for lost earnings in a survival action against a tortfeasor, the decedent's estate must prove that the damages have exceeded the *limits* of its coverage under Section 202(b). Under Allstate's analysis no decedent's estate could ever prove this fact because the estate would never qualify for work loss benefits in the first place. The limits are never reached because the coverage is not afforded in any amount to survivors of deceased victims. Ergo, the net result is that the estate of a deceased victim

7. See *Heffner v. Allstate Ins. Co.*, 265 Pa. Superior Ct. at 191 n.25, 401 A.2d at 1164 n.25 where we said:

"The other elements of damages for wrongful death and survival appear to have been preserved. With respect to wrongful death actions, the present value of the victim's services to his dependents is recoverable by reading Sections 301(a)(4), 202(d) and 103 together, and funeral expenses are recoverable by reading Sections 301(a)(4), 202(a) and 103 together. Similarly, in survival actions, damages for pain and suffering are recoverable under Section 301(a)(5), and medical expenses may be recouped pursuant to Sections 301(a)(4), 202(a) and 103."

can never recover monetary damages for lost earnings in a survival action.

However, in Pennsylvania our Constitution, Article III, Section 18 provides that the General Assembly may not limit "the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in the case of death from such injuries, the right of action, shall survive. . . ." To be sure, in another context our Supreme Court found that the No-Fault Motor Vehicle Insurance Act did not violate a similar provision of our Constitution. In *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975), the Court construed that part of Article III, Section 18 of the Constitution, which reads: "The General Assembly may enact [workmen's compensation laws] but in no other cases shall the General Assembly limit *the amount to be recovered* . . . for injuries to persons. . ." [Emphasis added.] The Court concluded that nothing in that clause of Section 18 of the Constitution prohibited the abolition or modification of a cause of action for personal injuries, and that the effect of the threshold provisions of the No-Fault Act was the partial abolition of a cause of action for personal injuries, not the limitation of damages recoverable therefor. Thus, *Singer v. Sheppard* is distinguishable on several grounds. First, the language of Article III, Section 18 of the Constitution with which we are concerned herein is considerably broader than the clause the *Singer* court construed. Indeed Section 18 may prohibit even the partial abolition of a cause of action for wrongful death or survival. Second, as footnote [4], supra, and the text accompanying it indicate, it cannot be said with equal confidence in this case that a cause of action has been abolished, indeed Section 301(a)(5) of the No-Fault Act specifically exempts fatal accidents from the general abolition clause of Section 301(a). If Allstate's argument were to prevail, it could only be concluded that the Act abolished only one aspect of damages in a survival action—economic loss. And, third, even the Court in *Singer v. Sheppard* perceived that the General Assembly intended to preserve all aspects of recovery for economic losses; the

Court stated: "The No-fault Act, however, allows recovery for proven economic loss *without limitation." Id.,* 464 Pa. at 396, 346 A.2d at 901. This statement would surely be erroneous if Allstate's interpretation of the Act prevail.

*Id.,* 265 Pa.Superior Ct. at 191–193, 401 A.2d at 1165. (Footnotes omitted.) Strictly speaking the foregoing quotation was dictum to our opinion in *Heffner v. Allstate Ins. Co.* since the plaintiff in that case was the deceased victim's widow and not the estate. However, the plaintiff in *Pontius* was the administrator of the deceased victim's estate. In reversing the lower court's decision in our order filed in *Pontius* we relied on our opinion in *Heffner v. Allstate Ins. Co.* Our Supreme Court never directly addressed the question of whether a deceased victim's estate may recover under the No-fault Act, however, it did affirm both our decision in *Heffner v. Allstate Ins. Co.* and our order in *Pontius.* Furthermore, the Supreme Court adopted much of our opinion in *Heffner v. Allstate Ins. Co.* as its own. From the tenor of the Supreme Court's opinion in *Allstate Ins. Co. v. Heffner, supra,* and from its affirmance *sub silentio* in that case of our decision in *Pontius* that a deceased victim's estate may recover under the Act, we conclude that what was dictum in our earlier opinion must properly be applied to this case and become our holding. As we stated in *Heffner v. Allstate Ins. Co.* :

> In any event, even if we were to conclude that the General Assembly could, consistent with our Constitution, abolish the recovery of damages for economic loss in a survival action, we could not conclude that the General Assembly so intended—at least not in the equivocal manner Allstate's argument suggests. Such a reading of the Act would certainly forsake its stated objectives of being fair, comprehensive, and achieving "the maximum feasible restoration of all individuals injured *and compensation of the economic losses of the survivors* of all individuals killed" on our highways.

*Id.,* 265 Pa.Superior Ct. at 193, 401 A.2d at 1165–66. (Emphasis in the original) (Footnote omitted). There, we

termed the result advocated by the insurance company "untoward" and "legislatively unintended." *Id.* We are no less convinced of the correctness of our position in *Heffner v. Allstate Ins. Co.* today than we were two years ago. Indeed, in light of *Allstate Ins. Co. v. Heffner, supra,* we stand the firmer yet behind our conviction that the Legislature intended no such result. We hold today that the estate of a deceased victim is entitled to recover work loss benefits under the No-fault Act.[8]

Finally, although the "deceased victim" in the instant case is a minor child who had never worked, we see no difficulty in calculating his work loss.[9] Section 205(c) sets out the method by which the work loss of one not employed at the time of the accident is to be calculated:

(c) Not employed.—The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period;

8. See, e.g. *Bulgin v. Pennsylvania Assigned Claims Plan,* 655 Civil 1981 (Cumb. Co., Sept. 21, 1981); *Smith v. Motorist Mut. Ins. Co.,* 129 P.L.J. 389 (Alle. Co., 1981); *Tubner v. State Farm Mut. Auto. Ins. Co.,* 129 P.L.J. 387 (Alle. Co., 1981). *Cf. Sachritz v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 293 Pa. Superior Ct. 483, 439 A.2d 678 (per Hoffman, J., (1981); *Daniels v. State Farm Mut. Auto. Ins. Co.,* 283 Pa. Superior Ct. 336, 423 A.2d 1284, 1288 (1981).

In *Sachritz,* Judge Hoffman denominated these benefits as "post mortem work loss benefits."

Interestingly enough, in *Pontius v. United States Fidelity & Guaranty Co.,* on remand from the Supreme Court, the Dauphin County Court of Common Pleas came to the conclusion that the *Heffner* opinions, *supra,* did not stand for the proposition that an estate may collect work loss benefits. See *Pontius v. United States Fidelity & Guaranty Co.,* 102 Dauph. 432 (1981).

9. Since the only question properly presented is the propriety of awarding work loss benefits to the deceased eleven year old's estate we need not address the issue of dependency, the latter being more properly a question concerning survivor's loss benefits.

40 P.S. § 1009.205(c). Because the victim was never employed the "probable annual income" referred to in Section 205(c)(1) will be "the average annual gross income of a production or nonsupervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs" as required by Section 205(d)(C) of the Act. 40 P.S. § 1009.-205(d)(C). See *Marryshaw v. Nationwide Mut. Ins.*, 13 Pa.D. & C.3d 172 (1979).[10] In addition, it has been suggested that the fact that the victim never worked creates a problem about determining the proper "accrual period" to be utilized in fixing the work loss amount; we think the existence of such a problem illusory. The "accrual period," instantly, the number of years the deceased victim would have worked had he survived the accident, can be readily established by reference to actuarial tables and other relevant statistical compilations. This is true even though the deceased victim was never actually given the chance to work and that, therefore, we cannot precisely fix the date of his entry into the working world.

10. In *Marryshaw v. Nationwide Mut. Ins.*, 13 Pa. D. & C. 3d 172 (1979) the court held that a nineteen-year-old college student who had never worked, could collect work loss benefits under Section 205(c) of the Act based on the Pennsylvania Insurance Department's calculation of "the average annual gross income of a production or nonsupervisory worker in the private nonfarm economy in..." Pennsylvania. As the court cogently stated there, [the insurance company's] view [that such benefits are not conferrable] fails to take into consideration the established principle of Pennsylvania tort law that impairment of earning *capacity* resulting from physical or mental injury caused by an accident is a legitimate element of damages, and that proof of this element does not depend upon showing that, at some time the victim was gainfully employed. Accordingly, such damages have been awarded to a three-year-old child; *Campbell v. Philadelphia*, 252 Pa. 387, 97 Atl. 456 (1916); to minors, each seven years old; *Fedorawicz v. Citizens' Electric Illuminating Co.*, 246 Pa. 141, 92 Atl. 124 (1914); *O'Hanlon v. Pittsburgh Railways Co.*, 256 Pa. 394, 100 Atl. 972 (1917); to an eight-year-old girl, *Brzyski v. Schreiber*, 314 Pa. 353, 171 Atl. 614 (1934); to a ten-year-old boy; *Allen v. Buffalo, R. & P. Ry.*, 274 Pa. 518, 118 Atl. 490 (1922); and to a high school student, 18 years old at the time of the accident; *Fisher v. Schlegel*, 26 Berks 57 (1933), affirmed 315 Pa. 390, 172 Atl. 658 (1934).
Id. at 175–176. (Emphasis in original).

The order is reversed and the case remanded for disposition not inconsistent with this opinion.

HESTER, J., filed a dissenting opinion.

HESTER, Judge, dissenting:

This is a suit instituted by the estate of an 11-year old boy, killed in a sled riding accident, to collect "Work Loss Benefits" from his father's No-Fault Insurance Carrier. "Work Loss Benefits" can be collected only by those individuals included in the definition of survivors in the No-Fault Act.

As our Supreme Court recently stated in *Allstate v. Heffner,* 491 Pa. 447 at 450, 421 A.2d 629 at 631 (1980):

"This Court must start from the position that its duty 'is to ascertain and effectuate the intention of the General Assembly,' so that full effect is given to every position of a statute, if possible. 1 Pa.C.S.A. § 1921(a)(1980–81 pamphlet).

In enacting the No-Fault Act, the General Assembly expressly declared that "the maximum feasible restoration of all individuals injured and compensation of the economic *losses of the survivors* of all individuals killed in motor vehicle accidents on Commonwealth highways, ... is essential to the humane and purposeful functioning of commerce." 40 P.S. § 1009.102(a)(3) (emphasis added). Furthermore, 'it is hereby declared to be the policy of the General Assembly to establish ... a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and *the survivors of deceased victims.'* 40 P.S. § 1009.102(b) (emphasis added). The legislature has provided definitions for the terms with which we must interpret the No-Fault Act. The following definitions contained in Article I are required in order to resolve the issue presently before us: (Emphasis added).

And on 491 Pa. 452, 421 A.2d at 632:

"Survivors" means: (A) spouse; or (B) child, parent, brother, sister or relative dependent upon the deceased for support."

Clearly, to recover Work Loss Benefits, the claimant must be a survivor as defined by the Act. The Estate of the 11 year old deceased victim is certainly not a "Survivor" as defined by the No-Fault Act. Therefore, the Estate is not entitled to receive Work Loss Benefits.

The majority contends that this case is controlled by our Opinion in *Heffner v. Allstate Insurance Company*, 265 Pa.Super. 181, 401 A.2d 1160 (1978). I do not agree. There, the appellant-plaintiff was the surviving widow, the spouse of the decedent. She clearly qualified as a "Survivor" under the No-Fault Act. In the case at bar the appellant is the Estate of the decedent, and does not qualify as a "Survivor". John G. Freeze, Jr., as father of the deceased victim, is not to be confused with John G. Freeze, Jr., Administrator of the Estate of the deceased victim, the within appellant-plaintiff. The Estate is a separate and distinct entity.

In *Heffner v. Allstate*, supra, the trial court held that the surviving widow-appellant was entitled to recover the "Survivors Loss" benefits but not the "Work Loss" benefits her husband indisputably would have received had he been permanently injured, rather than killed in the accident. Our Court reversed, holding "that appellant is entitled to recover work loss benefits *as the survivor* of a deceased victim", 265 Pa.Superior Ct. 188, 401 A.2d at 1163 (emphasis added).

The only issue in *Heffner v. Allstate* was whether the *spouse* of decedent could collect in her own right, both "Survivors Loss" benefits and "Work Loss" benefits under the No-Fault Act. Our Opinion concluded with the following:

". . . We conclude that appellant is entitled to recover *work loss benefits as the survivor* of a deceased victim under the No-Fault Motor Vehicle Insurance Act and, consequently, under the contract of insurance with Allstate". 265 Pa.Superior Ct. 193, 401 A.2d at 1166 (Emphasis added).

Our holding in *Heffner v. Allstate*, is restricted to awarding *Work Loss Benefits* to *Survivors* of deceased victims as enumerated in the Act. It cannot be here broadened to

include the estates of deceased victims. That argument, or interpretation, was never advanced or asserted in *Heffner v. Allstate.* We were there concerned only with the effort of the spouse of the deceased victim to collect Work Loss benefits. His estate was not a party. I joined in that Opinion. I continue to believe it to be a correct interpretation of the Act. It permitted recovery by one included in the Legislative Enumeration of *Survivors.*

As asserted by the majority, the Supreme Court, in *Allstate v. Heffner* and *Pontius v. United States Fidelity and Guaranty Company,* 491 Pa. 447, 421 A.2d 629 (1980), affirmed our Opinion in *Heffner v. Allstate.* The opinion of the Supreme Court concerns itself only with the fact situation in *Heffner* and the right of *Survivors* to collect both *Survivors Loss* and *Work Loss* benefits under the No-Fault Act. *Pontius* is mentioned but once in the Opinion.

As Justice Nix states of 491 Pa. at 453, 421 A.2d at 632–33:

> "The crux of the issue presented to us is whether the legislature intended 'victims' of motor vehicle accidents to be accorded differing basic loss benefits from those accorded *survivors* of 'deceased victims.' Appellants, Allstate and USF&G, contend that the legislature did intend such a distinction. On the one hand, appellants assert that 'victims' are entitled to the following basic loss benefits: allowable expense, work loss, and replacement services loss. On the other hand, appellants maintain survivors of 'deceased victims' are only entitled to: allowable expense (funeral expenses) and *survivor's* loss. This view has been adopted by four different courts of common pleas but was rejected by the Superior Court in the two cases presently before us." (Emphasis added).

The Supreme Court discussed only the issues involved in the *Heffner* appeal and restricted its discussion to the rights of *"Survivors"* as defined in the No-Fault Act. The term *"Survivors"* is used throughout the Opinion. The facts of the *Pontius* appeal were never discussed.

The major thrust of the Supreme Court's Opinion in *Allstate* was to rebut the allegation that the No-Fault Act

did not permit the recovery of both "Survivors Loss Benefits" and "Work Loss Benefits" by *survivors* of deceased victims. Double recovery was the major issue in *Allstate.* In disposing of that issue the Supreme Court stated at, 491 Pa. 459, 421 A.2d 636:

"Even assuming such potential for double recovery, this fact, in and of itself, does not necessarily evidence a legislative intention to deny "work loss" benefits to *survivors.* As appellee Pontius points out in his brief, the legislature has allowed double recovery of other benefits under the Act. For example, Section 203 of the Act concerning Collateral Benefits permits victims to recover their medical expenses from Blue Cross and Blue Shield and then recover the same expenses a second time from the no-fault carrier. It is apparent that the "vice" of double recovery was not foremost in the minds of the legislators when the No-Fault Act was enacted. Consequently, the mere possibility of a double recovery by granting "work loss" benefits to *survivors* of deceased victims, does not seem contrary to either the express or implied intention of the legislature.

However, we believe that in practice, recovery of *survivors* loss and work loss benefits by *survivors* of deceased victims, will no more constitute double recovery under the Act than does recovery under analogous wrongful death and survival actions in tort law. See *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659 (1942); *First National Bank of Meadville, Pa. v. Niagra Therapy Mfg. Corp.,* 229 F.Supp. 460 (W.D.Pa.1964); and *Hochrein v. United States,* 238 F.Supp. 317 (E.D.Pa.1965). As we view the Act, the decedent's contribution of income under survivor's loss recovery shall be excluded from the amount recovered under work loss. In this manner, both basic loss benefits will compliment, rather than duplicate each other. It must be kept in mind that the Act sets monetary limits of $15,000 for recovery of work loss benefits and $5,000 for survivor's loss benefits. If actual losses do not reach or exceed these limits, the full amounts of these basic loss benefits need not be paid. (Emphasis added).

In the concluding paragraph of its Opinion in *Allstate,* the Supreme Court embraced the position adopted by this Court in *Heffner.* See 491 Pa. 460, 421 A.2d 636:

> The position taken by the Superior Court in *Heffner* is the most cogent approach to the No-Fault Act. The recovery of work loss benefits by *survivors* of deceased victims best fulfills the legislature's express intention to provide "compensation of the economic losses of the *survivors* of all individuals killed in motor vehicle accidents" by providing "adequate basic loss benefits [to] . . . the *survivors* of deceased victims." (Emphasis added).

Note the constant use of the word "Survivors".

The intent of the Legislature in enacting No-Fault was to provide "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the *'survivors'* of all individuals killed in motor vehicle accidents on Commonwealth highways . . . ." 40 P.S. § 1009.102(a)(3) (emphasis added). Furthermore, it provided that, "it is hereby declared to be the policy of the General Assembly to establish . . . a statewide system of prompt and adequate loss benefits for motor vehicle accident victims and the *'survivors'* of deceased victims," 40 P.S. § 1009.102(b) (emphasis added).

The definition of the term *"survivor"* in the Act does not include the Estate of a deceased victim. We are bound by that definition.

I am of the opinion that the principle of expressio unius est exclusio alterius applies to an interpretation of that statutory language. By expressly naming the parties that were to be considered as "Survivors" under the No-Fault Act, the Legislature intended to exclude all parties and/or entities not included in their definition.

In retrospect, an estate of an individual could not possibly be considered a survivor. The estate does not exist prior to the death of the testator. Not having existed prior to the death of the individual, the estate cannot be a survivor. The Estate of John Goss Freeze did not come into existence until

some time following his death. His Estate cannot be considered as one of his survivors.

The majority would have us expand the legislative definitions of *"survivor"* to include the estate of a deceased victim. In so doing the majority is once again moving out of the area usually inhabited by the Judiciary and into the habitat of the Legislature. This is not unique. This inclination has been common to the Bench since "the time the memory of man runneth not to the contrary." While asserting the power of judicial review, Chief Justice John Marshall carefully elaborated this view: "Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law." *Osborn v. United States Bank*, 9 Wheaton 738, 866, 6 L.Ed. 204 (1824).

We are often inclined to become "robed legislators". In the instant case, there is no cause to inject the court into the role of the Legislature. The definition of *"survivor"* in the statute is clear and precise.

> "When the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

1 Pa.Con.Stat.Ann. § 1921(b).

In construing the provisions of the No-Fault Act, we must be mindful of our obligation to follow established rules of statutory construction under which we are not permitted to disregard the clear and unambiguous language of the Act on the pretext that its literal interpretation will frustrate its spirit.

The Act clearly restricts recovery of work loss benefits to *"survivors"* as defined in the Act. The estate of the deceased victim is not included in that definition. No where in the Act is there a provision that would permit an estate to recover the basic loss benefits created by the Act. It is clear

that an estate, therefore, cannot recover those basic loss benefits.

The result, which I urge, is compelled by a valid and unambiguous statute with which courts may not palter under the pretext of construction or interpretation. 1 Pa.C.S.A. 1921(b). The result urged by appellant can be achieved only through Legislation.

The majority finds that the "sub silentio" affirmance by the Supreme Court of Judge Wieand's order of July 3, 1979, remanding *Pontius v. U.S.F. & G.*, supra, to the court below, is sufficient to support a conclusion that the estate of a deceased victim is entitled to work loss benefits under the No-Fault Act.

I do not agree.

The Supreme Court has at no time, either directly or indirectly, ever addressed the question as to whether the estate of a deceased victim may recover work loss benefits. The most that the Supreme Court has done is affirm Judge Wieand's order in *Pontius*, supra. That order did no more than reverse and remand without prejudice. No opinion or memorandum was filed. That, I submit, was not a "decision" of the Superior Court. This, in my judgment, is not sufficient to support the conclusion that the estate of a deceased victim can collect No-Fault benefits, particularly in view of the wording of the Act.

The majority further states that: "From the tenor of the Supreme Court's opinion in *Allstate Insurance Company v. Heffner*, supra, and from its affirmance sub silentio in that case of our decision in *Pontius* that a deceased victim's estate may recover under the Act, we conclude that what was dictum in our earlier opinion must properly be applied to this case and become our holding." Slip Opinion, page 1004.

My reading of the Supreme Court opinion in *Allstate v. Heffner*, supra, leads me to the opposite conclusion. In that opinion that court states that one of the purposes of the Act

was to provide maximum feasible restoration of all individuals injured and compensation of the economic losses of the *survivors* of all individuals killed in motor vehicle accidents. The court further stated: "The legislature has provided definitions for the terms with which we must interpret the No-Fault Act. The following definitions contained in Article I are required in order to resolve the issue presently before us."

"Survivor" means:

(A) spouse; or

(B) child, parent, brother, sister or relative dependent upon the deceased for support.

The Supreme Court specifically listed that definition of "survivors" in its opinion.

The tenor of the Supreme Court's opinion in *Allstate v. Heffner,* is that work loss benefits could be recovered by *survivors* of deceased victims and that the recovery of both work loss and survivors loss benefits by *survivors* of deceased victims was permitted. The opinion refers to *survivors* throughout. Recovery is strictly limited to *survivors* as defined in the Act.

There is absolutely nothing in the tenor of the Supreme Court's opinion that would substantiate the conclusion that the estate of a deceased victim could collect work loss benefits. The opposite is true. The opinion rigidly confines itself to *survivors* as defined by the Act. The plaintiff-appellee was the spouse of the deceased victim. She was covered by the definition of *survivors* in the Act, and she was permitted to recover. Her husband's estate was not a party. This is the only valid conclusion that can be drawn from that opinion.

The Supreme Court's opinion in *Allstate* does not hold that the estate of a deceased victim is entitled to work loss benefits. The No-Fault Act makes no such provision.

I therefore dissent.