## Eget v. Maryland Casualty Co.

520

*Martin D. Cohen*, for plaintiff.
*Frank A. Baker III*, for defendant.

DAVISON, *J.*, September 24, 1982—This novel assumpsit action,[1] tried nonjury, involves a claim by plaintiff, Rose Eget, for benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act[2] in connection with the drowning death of her son, David Graboske. Plaintiff, who contends that her son's death resulted from the maintenace and use of a motor vehicle, seeks payment under a policy of insurance issued by defendant insurance carrier to her husband, Edward C. Eget. We find for plaintiff

---

1. On October 27, 1981, the cases of Rose Eget, Administratrix of the Estate of David Graboske v. The Maryland Casualty Co., docketed to no. 79-C-897, and Rose Eget v. The Maryland Casualty Co., docketed to no. 79-C-1451, were consolidated with the consolidated action bearing docket no. 79-C-1451.

2. Act of July 19, 1974, P.L. 489, Pa. Stat. Annon. 40 §§ 1009.101-1009.701 (Purdon Supp. 1982-83) (No-fault Act).

and award the damages as hereinafter discussed.

At trial, the parties stipulated to the following facts: Plaintiff was the parent and natural mother of decedent, David Graboske. While driving his brother-in-law's automobile on August 5, 1978, decedent, who was a member of plaintiff's household, struck a telephone pole located approximately 200 feet from a bridge. With the exception of the events described in the next two paragraphs of this opinion, despite attempts made by police officers to find him, decedent's whereabouts after the accident were unknown. His body was subsequently found in the Susquehanna River on August 7, 1978, and the coroner reported a death by drowning. The incident did not occur in Lehigh County. The action was filed here solely because defendant maintains an office in Lehigh County.

Eyewitnesses testified that they observed a vehicle wrapped around a telephone pole in the late evening hours of August 5, 1978. When they approached the vehicle, they noted how badly damaged it was and that the driver (decedent) appeared stunned and confused and was bleeding from his mouth and forehead; there was blood on his clothing and on the seat of the car. After helping the driver walk across the street, they sat him on the ground in front of a nearby gas station to await the arrival of the police. The driver did not answer questions completely and, according to one witness, made no sense. A third eyewitness corroborated this testimony and added that the driver had asked him to take responsibility for the accident.

A police officer, who arrived and began investigating the accident, observed that the driver complained of dizziness and was bleeding, but added that his speech was not slurred and that he did not appear to be in shock. The officer was then called

away to assist another individual who had passed out nearby. During the period that the driver was left unattended, he disappeared. Attempts to locate him proved futile until his body was recovered from the river several days later.

Dr. Robert G. Hunter, a pathologist and the coroner in this case, testified that he performed an autopsy on decedent's body on August 9, 1978. Because the body had been in the river for three to five days during a period of warm weather and had decomposed considerably, he was unable to determine whether brain injuries existed. He indicated, however, that no signs of skull or rib fractures, large lacerations or contusions were present on the body. After adding that several teeth were missing, Dr. Hunter opined that decedent suffered an accidental death due to drowning.

By stipulation of the parties, Dr. Isadore Mihalakis, a well-known Allentown physician and forensic pathologist whose work entails accident reconstruction, was qualified as an expert witness. Dr. Mihalakis initially testified that he received all relevant accident and autopsy reports, statements by witnesses, and photographs in this case and that he personally discussed the autopsy report with Dr. Hunter. Based on his review of this information, he determined that decedent drowned three to six days prior to being found and that decedent suffered from head, jaw, and chest injuries, bruising, and lacerations as a result of the accident. In his opinion, decedent experienced variable alterations of consciousness. Dr. Mihalakis concluded that there was a definite relationship between the automobile accident and the drowning.

The insurance policy issued to Edward C. Eget by defendant, The Maryland Casualty Company, defines family member as "a person related to [the

named insured] by blood, marriage or adoption who is a resident of [the named insured's] household, including a ward or foster child." Parts A and B of the policy specifically provide liability and medical coverage for "covered persons" including the named insured or family member. Personal injury protection coverage also' provides benefits for medical expenses, work loss, replacement service loss, funeral expenses, and survivor's loss "[I]n bodily injury to an eligible person due to an accident resulting from the maintenance or use of a motor vehicle as a vehicle."

## I

Turning first to the issue of causation, when the cause of the injury or death is not readily apparent there is a need for expert testimony: Washko v. George L. Ruckno, Inc., 180 Pa. Superior Ct. 606, 121 A. 2d 456 (1956); Farley v. Southeastern Pennsylvania Transportation Authority, 279 Pa. Superior Ct. 570, 421 A. 2d 346 (1980); and, Simmons v. Mullen, 231 Pa. Superior Ct. 199, 331 A. 2d 892 (1974).

We thus resort to expert medical opinion.

Expert testimony is admissible and properly considered, when, taken in its entirety, it expresses reasonable certainty that the incident in question was a substantial factor in bringing about the injury: Smialek v. Chrysler Motors Corporation, 290 Pa. Superior Ct. 496, 434 A. 2d 1253 (1981). Kravinsky v. Glover, 263 Pa. Superior Ct. 8, 396 A. 2d 1349 (1979); Hussey v. May Department Stores, Inc., 238 Pa. Superior Ct. 431, 357 A. 2d 635 (1976). "Nor is the expert's testimony destroyed by the fact that in one part of his testimony he used language weaker than the requisite shiboleth, provided that at some point he states his opinion with sufficient

definiteness." Judge Hoffman in Kravinsky v. Glover, supra, at 22 n. 11, 396 A. 2d 1356 n. 11, citing Feldman, Pennsylvania Trial Guide I, § 7:80 (1975 Supp.). After considering Dr. Mihalakis's detailed, unequivocal testimony on causation here, together with all of the other relevant evidence, we conclude that the automobile accident was a substantial factor in bringing about decedent's drowning.

Section 204 of the No-fault Act specifies that the security for the payment of basic loss benefits applicable to an injury to an insured is the security under which the victim or deceased victim is insured: Pa. Stat. Annon. 40 § 1009.204 (Purdon Supp. 1982-83). As explained further in Shrager's The Pennsylvania No-fault Motor Vehicle Insurance Act (1979) at 1:15.3 at 122:

"An insured individual (who is not injured while driving his employer's car) must look to his own security for payment of basic loss benefits. It is one of the essential elements of the No-fault Act that benefits for injuries arising out of a motor vehicle accident generally will be paid on a first-party basis by the carrier for the insured. This remains true whether he was injured while driving his own car, while he was an occupant of another vehicle, or even if, as a pedestrian, he is run down by a motor vehicle. The security follows the person, not the vehicle. Note, however, that Exclusion (a) of the model insurance policy provides that the coverage for basic loss benefits does not apply to bodily injury to the 'insured' resulting from the maintenance or use of a motor vehicle belonging to the insured which is not described in the policy and a premium paid therefor."

Thus, decedent, who was a family member and resident of the Eget household, qualified as a covered person under the policy issued by defendant here.

## II

Having concluded that decedent's death resulted from the maintenance and use of a motor vehicle and that decedent was covered under the policy in question, we next determine the type and amount of damages to be awarded. In her capacity as a survivor, plaintiff claims for lost wages, survivor's loss, funeral expenses, and counsel fees; as administratrix of her son's estate, for survivor's benefits, funeral expenses, and counsel fees.

We agree with President Judge Shughart of Cumberland County who observed in Bulgin v. Pennsylvania Assigned Claims Plan, 21 Pa. D. & C. 3d 15, 17 (1981), that any analysis of the No-fault Act must begin with the premise that the General Assembly intends the act to provide "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways." Pa. Stat. Annon. 40 § 1009.102 (a)(3). (Purdon Supp. 1982-83). Historically, insurance contracts have been construed in favor of the insured in close cases: Heffner v. Allstate Insurance Company, 265 Pa. Superior Ct. 181, 401 A. 2d 1160 (1979), aff'd, 491 Pa. 447, 421 A. 2d 629 (1980). The tendency has been, in construing and ascertaining the intent of the legislature or the intendment of an insurance policy, to favor coverage for the insured. Id. Utilizing these guidelines, we will examine plaintiff's claims for basic loss benefits and counsel fees under the No-fault Act.

### A.

Our Supreme Court in Heffner held that the survivor of an insured fatally injured in a motor vehicle accident may recover both survivor's loss and work

loss benefits. In Daniels v. State Farm Mutual Automobile Insurance Company, 283 Pa. Superior Ct. 336, 423 A. 2d 1284 (1980), the Superior Court determined that such benefits could be awarded in cases arising prior to Heffner. Double recovery should not result thereby as explained by the Heffner court at 459-60:

"However, we believe that in practice, recovery of survivor's loss and work loss benefits by survivors of deceased victims, will no more constitute double recovery under the Act than does recovery under analogous wrongful death and survival actions in tort law. See Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A. 2d 659 (1942); First Nat. Bank of Meadville, Pa. v. Niagra Therapy Mfg. Corp., 229 F.Supp. 460 (W.D.Pa. 1964); and Hochrein v. United States, 238 F.Supp. 317 (E.D.Pa. 1965). As we view the Act, the decedent's contribution of income under survivor's loss recovery shall be excluded from the amount recovered under work loss. In this manner, both basic loss benefits will compliment, rather than duplicate each other. It must be kept in mind that the Act sets monetary limits of $15,000 for recovery of work loss benefits and $5,000 of survivor's loss benefits. If actual losses do not reach or exceed these limits, the full amounts of these basic loss benefits need not be paid. The position taken by the Superior Court in Heffner is the most cogent approach to the No-fault Act. The recovery of work loss benefits by survivors of deceased victims best fulfills the legislature's express intention to provide 'compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents' by providing 'adequate basic loss benefits [to] . . . the survivors of deceased victims.'"

At least one trial court has specifically interpreted

the language in Heffner to mean that a claimant-survivor may recover a maximum $20,000 (rather than $15,000) for both types of benefits, provided that decedent's earning capacity or contributions to the support of his dependents were found to be equal to $15,000 and $5,000 respectively. See Free v. State Farm Insurance Company, 45 North. 123 (1981). Moreover, in Midboe v. State Farm Mutual Auto. Ins. Co., 495 Pa. 348, 433 A. 2d 1342 (1981), the Pennsylvania Superior Court affirmed (by an equally divided court) a decision of this court that, except for a spouse, dependency *must* be shown in order to recover survivor's benefits under the No-fault Act.

Since a "deceased victim" is not to be treated differently from a "victim" under the clear mandate of Allstate Insurance Company v. Heffner, supra, plaintiff's claim made on behalf of the estate is no better than that of decedent. Alter thoroughly examining the issue Judge Shughart determined in Bulgin v. Pennsylvania Assigned Claims Plan, supra, that neither the decedent nor his estate can recover survivor's loss benefits at 22:

"Section 202(d) of the act provides: 'Survivors loss, as defined in section 103 shall be provided in an amount not to exceed five thousand dollars ($5,000).' 40 P.S. § 1009.202(d). Section 103 in turn defined survivor's loss as '(A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivor's . . . and (B) expenses reasonably incurred by a survivor or survivor's after a victim's death. . . .' 40 P.S. § 1009.103. Clearly, to recover survivor's loss, the claimant must be a survivor. A survivor is defined as a '(A) spouse; (B) child, parent, brother, sister or relative dependent upon the deceased for support.' 40 P.S. § 1009.103. The estate is certainly not a survivor as defined by

the No-fault Act; therefore, the estate is not entitled to receive survivor's loss benefits. Because the estate has no valid claim to survivor's loss benefits, defendant's demurrer with respect to the estate's claim for survivor's loss benefits must be sustained."

We, too, deny this claim.

While plaintiff is entitled to recover for funeral expenses in either capacity, we award $1,500 for such expenses to plaintiff only as administratrix of the estate to avoid double recovery here. The claim for counsel fees, however, poses a more difficult question. This case involved issues of legal causation and proximate cause and also predated the recent spate of appellate decisions in the no-fault area. Since we cannot hold that defendant's denial of this claim was without a legally reasonable foundation, we deny the request for counsel fees. See Pa. Stat. Annon. 40 § 1009.107 (Purdon Supp. 1982-83); Free v. State Farm Insurance Company, supra.

### B.

The complaint seeks merely (as a survivor) $15,000 for work loss and $5,000 for survivor's loss benefits. Stressing, however, that the insurance policy in question covered three automobiles and that separate no-fault premiums were paid for each vehicle, plaintiff's counsel asserted in his trial brief the right to "stack" or cumulate work loss benefits to $45,000 here.

Plaintiff also argued the propriety of "stacking" at trial and in a subsequently-submitted memorandum of law. In so doing, plaintiff has not only posed challenging substantive questions, but has

also implicitly[3] raised the novel procedural question of whether a party in an assumpsit action must *plead* or otherwise *raise of record* a claim for "stacking" in order to recover such cumulated damages. We must resolve the procedural question before addressing the merits of the underlying action.

The general rule requiring conformity between the allegata and probata is intended to avoid the injustice that would result by confronting a defendant for the first time at trial with proof of a cause of action of which he was not put on notice and which he is not prepared to defend: Computer Print Systems, Inc. v. Lewis, 281 Pa. Superior Ct. 240, 422 A. 2d 148 (1980). The rule should not be employed, however, to create a mere technical impediment to frustrate the administration of justice, Hrivnak v. Perrone, 472 Pa. 348, 372 A. 2d 730 (1977), and one of the most important considerations is whether the defendant was misled or surprised in his preparation and presentation of the case by the variance: Computer Print Systems, Inc. v. Lewis, supra. Furthermore, as explained in Glanski v. Ervine, 269 Pa. Superior Ct. 182, 193, 409 A. 2d 425, 431 (1979):

"Finally, appellants argue that the evidence of damages was improper because it consisted merely of Glanski's own testimony about the value of the house at the time of sale and after the termites were discovered. However, owners of property are competent to testify as to the value of their property. Williams v. Commonwealth Department of Highways, 423 Pa. 219, 223 A. 2d 865 (1966). If Glanski

---

3. Defendant never objected to the mention of "stacking" no-fault benefits.

was unable to apportion the value between the land and house, this went to his credibility, not to his competence. Nor was this proof an impermissible variation between what we alleged as damages (cost of repairs) and what was proved (diminished value).

The first and fundamental rule in the production of evidence is that the evidence offered must correspond with what is alleged in the pleadings as the basis of the action or of the defense.

4 Standard Pennsylvania Practice, Ch. 17, §65 at 475 (footnote omitted).

Here, however, whatever, variance there was did not alter the cause of action (which is forbidden, see id.), but merely pertained to the damages, which, indeed, did not need to be pleaded at all. Pa.R.Civ.P. 1044(b). Furthermore, the tendency of the courts now is to overlook a variation between pleading and proof if that will secure substantial justice. Domineck v. Tuskan, 201 Pa. Superior Ct. 608, 193 A. 2d 626 (1963)."

Applying these principles to the case at bar, we are inclined to overlook the technical pleading deficiency *in this instance*. The concept of "stacking" no-fault benefits has only recently come to the fore, and this action was commenced sometime in 1979. Furthermore, even though the pleadings contain no specific claim for cumulated damages through "stacking," the parties *stipulated for the trial record* that plaintiff would have been able to prove decedent's capability of producing the $45,000 being claimed as work loss benefits. By contrast, we are not considering the propriety of "stacking" survivor's loss benefits here, since plaintiff first raised the issue in her memorandum of law submitted subsequent to trial. By so stipulating, defendant demonstrated its

knowledge of the claim and at least tacitly manifested some willingness to conform the allegata to the probata. See Quashnock v. Frost, 299 Pa. Superior Ct. 583, 445 A. 2d 121 (1982). We feel constrained to observe, however, that sound practice obliges one who desires to "stack" no-fault benefits to actually allege the full extent of the damages claimed in the complaint or petition. See Heinsey v. Nationwide Insurance Company, 74 Berks 87 (1981).

While our research discloses no reported appellate authority specifically permitting cumulation of benefits, we note that the Superior Court recently touched upon the "stacking" question in Freeze v. Donegal Mutual Insurance Company, 301 Pa. Superior Ct. 344, 447 A. 2d 999 (1982). Writing for the Court en banc in Freeze, President Judge Cercone cited in passing—without actually resolving the issue— numerous out-of-state cases that permitted "stacking" of no-fault benefits: Id. at 347 n.3, 447 A. 2d at 1001 n.3.

We perceive the legislative intent of the No-fault Act to have presented a system designed to compensate those parties covered thereunder to the limits of applicable coverage but not in excess of the actual damages and hold that "stacking" of work loss benefits carries out that purpose.

Furthermore, two of our sister counties that have addressed the question have likewise allowed recovery of cumulated benefits. In Wilson v. Keystone Insurance Company, No. 3822 November term, 1979 (C.P. of Phila. Co. May 7, 1981), for example, Judge Gelfand determined that declared legislative intent of the act, when considered in conjunction with decisional law pertaining to uninsured motorist coverage, favored permitting "stacking." Judge Eshelman similarly permitted cumulated coverage up to the limit of no-fault liability as applied to each

automobile "to the extent of actual loss up to the maximum amount of coverage provided by [t]he vehicles" in Heinsey v. Nationwide Insurance Company, supra, at 90.

### ORDER

Now, September 24, 1982, after trial without jury, it is ordered that:

1. Plaintiff is awarded $45,000, plus interest, against defendant for work loss.

2. Plaintiff is awarded $5,000, plus interest, against defendant for survivor's loss.

3. Plaintiff is awarded $1,500, plus interest, against defendant for funeral expenses.

4. No counsel fees are awarded either party.