448 A.2d 1080

Selwyn CHESLER, Administrator of the Estate of Barry C. Chesler, Deceased, Appellant,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Oct. 7, 1981.

Filed July 23, 1982.

Petition for Allowance of Appeal Granted Nov. 5, 1982.

Jeffrey M. Stopford, Philadelphia, for appellant.

David M. McCormick, Philadelphia, for appellee.

Before CERCONE, President Judge, and HESTER, CA-VANAUGH, WICKERSHAM, BECK, MONTEMURO and POPOVICH, JJ.

CERCONE, President Judge:

This appeal[1] presents us with two questions under the Pennsylvania No-fault Motor Vehicle Insurance Act.[2]

The first question presented is whether a deceased's estate, here represented by the deceased's mother as administrator of the estate, can collect "post mortem work loss benefits" under the No-fault Act.[3] The lower court ruled that it could not. We need not dwell on the matter since our holding in *Freeze v. Donegal Mut. Ins. Co.*, 301 Pa.Superior Ct. 344, 447 A.2d 999 (1982) is controlling here. As mandated by our decision in that case, we reverse the order of the lower court as to work loss benefits.

We cannot so easily dispose of the second question presented here. That question is whether appellant can collect survivor's loss benefits under the No-fault Act.

The lower court set out the facts of the case as follows:

On January 9, 1979, Dr. Barry Chesler ("Decedent") was involved in an automobile accident that resulted in his death. At the time of his death he was a duly licensed medical doctor, serving his residency. He was single, without any children, and was survived by his mother who resides in South Africa.

---

1. This case was originally argued before a panel of this Court. Another panel heard argument in *Freeze v. Donegal Mut. Ins. Co.*, 301 Pa.Superior Ct. 344, 447 A.2d 999 (1982) on one of the issues presented in this case. We ordered both cases argued before the Court *en banc* because of the importance of the questions involved.

2. Act of July 19, 1974, P.L. 489, No. 176; 40 P.S. §§ 1009.101 *et seq.* (Supp.1980–81). Hereinafter referred to as the Act or the No-fault Act.

3. See *Sachritz v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 293 Pa.Superior Ct. 483, 439 A.2d 678 (1981) for the coining of this term.

Although the Decedent's mother was not financially dependent on him at the time of his death, she maintained that Decedent would have contributed some financial support toward her goal to immigrate to the United States. Therefore, she maintains that under the No-Fault Act, 40 P.S. 1009.101, et seq., she is entitled to the $15,000 policy limit covering work loss, and the $5,000 policy limit covering survivor's loss.

Although the parties had stipulated that appellant would have received in excess of $5,000 from her son had he survived the accident, the court denied both the work loss benefits and survivor's loss benefits because appellant was not dependent upon him for support at the time of his death. In reaching its decision the court relied on the case of *Midboe v. State Farm Mut. Auto. Ins. Co.*, 8 D. & C.3d 83 (1978), which was affirmed per curiam and without opinion by a panel of this Court at 261 Pa.Superior Ct. 447, 395 A.2d 991 (1978).[4] The lower court's opinion in *Midboe* turned on Section 103 of the Act which defines "survivor" thus:

"Survivor" means:

(a) spouse; or

(b) child, parent, brother, sister or relative dependent upon the deceased for support.[5]

The lower court in *Midboe* reasoned that "dependent" was intended to modify not only "relative" but "child, parent, brother, sister" as well. See *Midboe v. State Farm Mut. Auto. Ins. Co.*, 8 D. & C.3d at 88–89. *And see* 40 P.S. § 1009.103 ("survivor"). In the instant case the court accepted the reasoning expressed in *Midboe* as persuasive, and accordingly denied appellant the survivor's loss benefits as well as the post-mortem work loss benefits she sought.

Subsequent to the lower court's decision in this case the Supreme Court considered *Midboe*. That court affirmed by an evenly divided court. See *Midboe v. State Farm Mut. Auto. Ins. Co.*, 495 Pa. 348, 433 A.2d 1342 (1981). (Three

4. The panel consisted of this writer and Judges Spaeth and Lipez.

5. Act of July 19, 1974, P.L. 489, No. 176, § 103; 40 P.S. § 1009.103, (Supp.1980–81).

justices in support of affirmance and three in support of reversal). However, we are not in any way bound by *stare decisis* to affirm the instant order based on the Supreme Court's disposition of *Midboe*, because the Supreme Court's split decision there carries no weight as precedent. See *Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841 (1977).[6] Nor are we bound by this Court's panel decision in *Midboe*. An appellate court may affirm a lower court's decision on any basis and is not restricted to a reconsideration of the reasoning or law relied upon by the lower court.[7] Where a decision is rendered by the appellate court without an opinion it is impossible to tell on what that decision was based.[8] Therefore, any reliance on our earlier decision in *Midboe*, rendered as it was without an opinion, is tenuous at best.[9]

We refer to the rules of statutory construction in order to determine whether the lower court erred in refusing appellant survivor's loss benefits. In construing the No-fault Act, as in the construction of any statute, we are guided by the dictates of the Statutory Construction Act.[10] Prime among the rules of statutory construction is the rule

6. *Cf. Commonwealth v. Mason*, 456 Pa. 602, 322 A.2d 357 (1974) (3–2 decision with only 5 members of the Court participating is binding precedent despite fact that majority in case was not a majority of the full Court). And see, *Crowell Office Equip. Co. v. Krug*, 213 Pa.Superior Ct. 261, 247 A.2d 657 (1968) (Superior Court may not overrule decision of Supreme Court).

7. *See, e.g., Baltimore & Ohio R. Co. v. Commonwealth Dept. of Labor & Ind.*, 461 Pa. 68, 334 A.2d 636 (1975) *appeal dismissed* 423 U.S. 806, 96 S.Ct. 14, 46 L.Ed.2d 26 (1975); *Sones v. Aetna Cas. & Ins. Co.*, 270 Pa.Superior Ct. 330, 411 A.2d 552 (1979).

8. Even if we had written a memorandum opinion when we considered *Midboe*, it could carry no weight as precedent. See *K. N. v. Cades*, 288 Pa.Superior Ct. 555, 432 A.2d 1010 (1981).

9. In any event, even if we were to conclude that the *Midboe* panel decision constitutes reliable precedent, the Court sitting *en banc*, as it is today, would have the power to overrule that panel decision. See *Toll v. Toll*, 293 Pa.Superior Ct. 549, 439 A.2d 712 (1982) (Court *en banc* overruled an earlier panel decision in a different case).

10. Act of November 25, 1970, P.L. 707, No. 230, repealed and reenacted, Act of December 6, 1972, P.L. 1339, No. 390; 1 Pa.C.S. § 1501 *et seq.*

that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When a statute is not ambiguous and the wording clear then the letter of statute may not be circumvented on the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). *Pittsburgh v. Royston Service, Inc.*, 37 Pa.Cmwlth. 394, 390 A.2d 896 (1978). It follows that where a statute is ambiguous or otherwise unclear then construction of the statute with an eye to the Legislature's intent is necessary. We are further required by the rules of construction to give effect to all provisions of a statute, 1 Pa.C.S. § 1921(a), except where to do so would yield an absurd or unconstitutional result, 1 Pa.C.S. §§ 1922(1), (2) & (3). We must also keep in mind that the General Assembly is presumed to favor public interests over private ones. 1 Pa.C.S. § 1922(5). Furthermore, insurance statutes are to be construed liberally in order to effect their purpose and promote justice. See *Sheppard v. Old Republic Life Ins. Co.*, 21 Pa.Cmwlth. 360, 346 A.2d 383 (1975); 1 Pa.C.S. § 1928(c). The General Assembly has aided us greatly in our task by including in Section 102 of the No-fault Act a clear statement of its reasoning and purpose in enacting the statute. 40 P.S. § 1009.102. Pertinent portions of that section read:

(a) *Findings.*—The General Assembly hereby finds and declares that:

. . . . .

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce;

(4) to avoid any undue burden on commerce; during the intrastate transportation of individuals, it is necessary and proper to have a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims and the survivors of deceased victims;

(b) *Purposes.*—Therefore, it is hereby declared to be the policy of the General Assembly to establish . . . a State-wide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims.[11]

Because the intent of the General Assembly is clear we need not resort to the other aids to determine its intent in adopting the No-fault Act. *Cf.* 1 Pa.C.S. § 1921(c).

■ It is clear that the phrase "dependent upon the deceased for support" in the definition of "survivor" modifies the word immediately preceeding it—"relative." The question before us however, is whether "dependent" was intended by the General Assembly to modify the words "child, parent, brother, sister" as well.

We look first to the so-called "last antecedent rule." [12] See *Buntz v. General American Life Ins. Co.*, 136 Pa.Superior Ct. 284, 7 A.2d 93 (1939). And see *Midboe v. State Farm Mut. Auto Ins. Co.*, 495 Pa. at 359, 360, 433 A.2d at 1348, 1349 (Opinion in support of reversal per Nix, J.) ("Dissenting Opinion" per Larson, J., joined by Kauffman, J.). Applying this rule would require us to read "dependent" as modifying "relative" alone, unless such a reading would contradict the Act read as a whole. We believe that reading "dependent" as modifying only "relative" would be fully consonant with the letter and spirit of the No-fault Act. We can find no provision with which such a reading would conflict. To the contrary, however, the reading of "survivor" accepted by the lower court and advocated here by the appellee insurance company, would conflict with other portions of the Act. If

11. Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 102; 40 P.S. § 1009.102.

12. Black's Law Dictionary, Fifth Edition, defines the "last antecedent rule" as follows:

A canon of statutory construction that relative or qualifying words or phrases are to be applied to the words or phrases immediately preceding, and as not extending to or including other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by the intent and meaning of the context or disclosed by an examination of the entire act.

dependency were required of all relatives, excluding spouses of course, then the words "child, parent, brother, sister" would be mere redundancies. Such a reading would contradict the settled rule of statutory construction that all words are to be given effect if possible. 1 Pa.C.S. §§ 1921(a), 1922(2); *Lukus v. Westinghouse Electric Corp.*, 276 Pa.Superior Ct. 232, 419 A.2d 431 (1980). Secondly, a requirement that all survivors (excepting spouses) be dependent upon the deceased for support would tend to vitiate the definition of "survivor's loss" contained in the same section of the Act.[13] The definition of "survivor's loss" speaks in terms of the deceased's "contribution" to the survivor or survivors of money and services performed *gratis.* Nowhere does there appear the indication that to recover the economic loss, or "contribution," that all survivors show dependency.[14] Furthermore, we do not believe that the reading of "survivor" advanced by the insurance company comports with the General Assembly's stated purpose in enacting the No-fault Act, which was to secure the prompt and adequate compensation of economic losses arising out of motor vehicle accidents to the maximum extent feasible. 40 P.S. § 1009.102. It would seem that a strict reading of this insurance statute, applying the last antecedent rule and giving effect to all provisions of the statute where possible, results in a construction of the

**13.** "Survivor's loss" means the:

(A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivors, if such victim had not sustained the fatal injury; and

(B) expenses reasonably incurred by a survivor or survivors, after a victim's death resulting from injury, in which the victim would have performed, not for income, but for their benefit, if he had not sustained the fatal injury, reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the victim's death resulting from injury.

40 P.S. § 1009.103.

**14.** See *Wercoch v. Liberty Mut. Ins. Co.*, 287 Pa.Superior Ct. 45, 429 A.2d 712 (1981) (Estranged wife of the deceased sought survivor's loss benefits). There a panel of this Court held that once a person has qualified as a "survivor", the survivor must still plead and prove the amount of the loss, or contribution and expenses incurred. Thus it would seem that the dependency of a relative is an issue separate and apart from the amount of survivor's loss benefits available to the deceased's survivors.

definition of "survivor" different from that accepted by the lower court and proposed by the insurance company. In other words, "dependent" would seem to modify only the word "relative" and no other.

Not only would the insurance company's reading of "survivor" create internal inconsistencies in the No-fault Act, but moreover, it would conflict with the Pennsylvania Wrongful Death Act.[15] The Wrongful Death Act does not require a survivor-beneficiary to show dependency, but merely economic loss as the result of the deceased's death. See *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *Prince v. Adams*, 229 Pa.Superior Ct. 150, 324 A.2d 358 (1974); *Migias v. United States*, 167 F.Supp. 482 (W.D. of Pa., 1959). Under appellee's analysis of the No-fault Act, those otherwise entitled to recovery for the wrongful death of their deceased under the Wrongful Death Act who were not dependent upon the deceased but who could show economic loss resulting from the death would be precluded from that recovery if their deceased died as the result of an accident "arising out of the maintenance or use of a motor vehicle." 40 P.S. § 1009.103 ("Loss"). This is so because the No-fault Act abolishes tort liability in wrongful death actions when the amount of economic detriment visited upon the deceased's family does not exceed $5,000. Where that detriment is greater than $5,000 tort liability remains as before. See 40 P.S. § 103 ("Survivor's loss"), 201, 202(c), 301(a)(4). Under appellee's analysis, those members of the deceased's immediate family—children and parents—who might be able to demonstrate economic detriment not amounting to "dependency" upon the deceased for support but in excess of $5,000 would be precluded from recovering their losses under the Wrongful Death Act, not because their losses would be less than the $5,000 tort liability threshold in wrongful death cases, but because they would be unable to meet the definition of "survivor" since they could not prove their "depend-

15. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 8301, substantially re-enacting the Act of April 15, 1851, P.L. 669, § 19, 12 P.S. § 1601, the Act of April 26, 1855, P.L. 309, § 1, 12 P.S. § 1602, and the Act of May 13, 1927, P.L. 992, No. 480, § 1, 12 P.S. § 1604.

ency" upon the deceased under the No-fault Act. In light of the General Assembly's stated purpose in enacting the No-fault Act, we believe that they could not have intended such a result. Had the General Assembly intended that result it could easily have drafted the Wrongful Death Act in a way which would have made it clear that such a result was indeed intended, and which would have eliminated the possibility of confusion. That the General Assembly did not perceive a conflict between the two Acts tends to indicate that the General Assembly did not intend the result now favored by the insurance company because conflict between the two Acts is inherent in the result argued by appellee. Furthermore, that the General Assembly did not see a conflict in the two Acts supports our reading of the No-fault Act, which harmonizes the Acts rather than creating a conflict between them. *Cf. Heffner v. Allstate Ins. Co.*, 265 Pa.Superior Ct. 181, 401 A.2d 1160 (1979), *aff'd sub nom. Allstate Ins. Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980).

As we view it, the definition of "survivor" accepted by the lower court creates inconsistencies within the No-fault Act, conflicts with the General Assembly's purpose in enacting the statute, and conflicts with the later enacted Wrongful Death Act as well.[16] By the rules of statutory construction we are logically compelled to read "survivor" otherwise. We hold today that the word "dependent" contained in the definition of "survivor" in Section 103 of the No-fault Act,[17] does not modify the entire sub-section, *i.e.* the words "child, parent, brother, sister," but was intended by the General Assembly to modify only the word immediately preceeding it—"relative." Because the lower court erred in arriving at a different reading of the Act its order denying appellant the survivor's loss benefits she sought must be reversed.

**16.** The Statutory Construction Act provides that where two statutes are irreconcilable then the later enacted statute will prevail. *See* 1 Pa.C.S. §§ 1935 & 1936. If we were to hold these two Acts irreconcilable the Wrongful Death Act, enacted two years after the No-fault Act, would emerge the victor. That, however, is not our holding since our reading reconciles the two Acts.

**17.** 40 P.S. § 1009.103 ("Survivor").

The judgment in favor of appellee is vacated, the order below reversed, and the case remanded for the entry of an order below not inconsistent with this opinion. Our jurisdiction is relinquished.

Reversed and remanded with directives.

HESTER, J., files a dissenting opinion.

HESTER, Judge, dissenting:

I respectfully dissent.

This is a suit instituted by the *estate* of a deceased medical doctor to recover work loss and survivors loss benefits under the No-Fault Act. At the time of his death he was a duly licenced medical doctor serving his residency. He was single, without children, survived by his mother. His mother is the administrator of his estate.

I dissent for the reasons set forth in my dissenting opinion in *Freeze v. Donegal Mutual Insurance Company*, 301 Pa.Superior Ct. 344, 447 A.2d 999 (1982). As set forth in my dissent, the No-Fault Act makes no provisions for the recovery of work loss benefits by the estate of a deceased victim. The estate is not a *survivor* as defined by the Act.

In the within appeal, the majority fails to distinguish, as did Judge Greenberg of the court below, between the mother as a *parent* of the deceased victim, and the mother as the *administrator* of his estate. The appellant is the estate, not the mother as a survivor. The majority obviously considers the mother to be the appellant rather than the estate. The majority thus proceeds to determine that even though the mother was not dependent upon her deceased son at the time of his death, she was entitled to both work loss and survivor's loss benefits. That issue of dependency is not and should not be involved in this appeal.

The majority should not have proceeded into determining whether the mother was dependent upon her deceased son at the time of his death. The mother is not the appellant. The mother is not a party to this litigation. The estate is the appellant. The estate is a separate and distinct entity. To

understate the situation, there is a vast difference. The mother, being a parent, is included in the definition of *"survivor"* in the No-Fault Act. The estate is not.

On page 1081 the majority states:

Although the Decedent's mother was not financially dependent on him at the time of his death, she maintained that Decedent would have contributed some financial support toward her goal to immigrate to the United States. Therefore, *she maintains that under the No-Fault Act,* 40 P.S. 1009.101, et seq., *she is entitled to the $15,000 policy limit covering work loss, and the $5,000 policy limit covering survivor's loss.* (Emphasis added).

I respectfully submit this information is irrelevant. The mother is not the appellant-plaintiff. The *estate* is the appellant.

The majority continues on page 1081 to state:

"Although the parties had stipulated that appellant would have received in excess of $5,000 from her son had he survived the accident, the court denied both the work loss benefits and survivor's loss benefits *because appellant was not dependent upon him for support at the time of his death."* (Emphasis added).

This is not a correct recitation of the facts. The appellant is the estate of the deceased victim. It is obvious that the majority mistakenly considers the mother to be the appellant.

As stated by the majority, the expressed intent of the legislature in enacting the No-Fault Act, 40 P.S. § 1009.102:

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the *survivors* of all individuals killed in motor vehicle accidents on Commonwealth highways;

(4) to avoid any undue burden on commerce; during the intrastate transportation of individuals, it is necessary and proper to have a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims and the *survivors of deceased victims;*

(b) Purposes.—Therefore, it is hereby declared to be the policy of the General Assembly to establish ... a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the *survivors of deceased victims.* (Emphasis added).

I direct the majority's attention to the repetitive use of the term "survivors". There can be no doubt that the Legislature intended the recovery of the No-Fault benefits only for the "Survivors" as defined in the Act.

As the majority has further pointed out, the legislature defined the term "Survivor" as used in the Act:

"Survivor means

(a) spouse; or

(b) child, parent, brother, sister or dependent upon the deceased for support."

It is obvious that the estate of a deceased victim cannot be considered a survivor under the provisions of the No-Fault Act. The Legislature has omitted an estate from the definition of "Survivor".

It is equally obvious that the principle of expressio unius est exclusio alterius must here be applied by this Court. By expressly naming the entities that are to be considered as "Survivors", the Legislature intended to exclude all parties and/or entities not included in their definition.

The majority goes to great lengths to set aside this Court's panel Opinion in *Midboe v. State Farm Mutual Auto Insurance Company*, 261 Pa.Superior Ct. 447, 395 A.2d 991 (1978); affirmed by the evenly divided Supreme Court, 495 Pa. 348, 433 A.2d 1342 (1981).

I respectfully submit the *Midboe* opinions have no application to the fact situation in the case at bar. In *Midboe*, the suit to recover No-Fault benefits was instituted by Elizabeth Midboe, the mother of an 18 year old boy killed in a motor vehicle accident. She was clearly a "survivor" under No-Fault and entitled to the benefits provided for in the Act. She sued in her own name, not in the name of the estate of her deceased son. The trial court denied recovery on the

basis that the mother was unable to demonstrate that she was dependent upon her 18 year old son at the time of his death. The lower court reasoned that the definition of the term "survivor" in the Act mandated that the mother, as a parent, had the burden of proving that she was dependent upon the deceased son at the time of his death.

There was no question that the appellant-plaintiff was a "survivor" under the Act.

The majority would adopt the "last antecedent rule" and hold that the clause "dependent upon the decedent for support" modified only the word "relative" and not the words "child", "parent", "brother", "sister". Therefore the parent does not have to prove dependency upon the deceased victim. I concur with this conclusion.

However, I repeat, the majority should not have reached the dependency issue. The estate of a deceased victim, by statute, cannot collect survivors loss benefits under the No-Fault Act. The estate cannot be a *"survivor"* within the No-Fault Act definition of survivor. Further, the Act does not provide for the recovery of the basic loss benefits by the estate of a deceased victim. This portion of the Act is not ambiguous. It requires no Judicial interpretation.

I therefore dissent.