458 A.2d 212

**Louis GOEBEL and Helen Goebel, his wife, Appellants,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY.**

Superior Court of Pennsylvania.

Argued May 19, 1982.

Filed March 18, 1983.

16

Robert D. Beck, Washington, for appellants.

Stephen Paul McCloskey, Washington, for appellee.

Before ROWLEY, MONTEMURO and VAN der VOORT, JJ.

ROWLEY, Judge:

This case presents another question of first impression under the Pennsylvania No-Fault Motor Vehicle Insurance Act.[1] The question raised is whether § 205(d) of the No-Fault Act, 40 P.S. § 1009.205(d) (Supp.1982–83), permits a claimant to recover increased work loss benefits from his no-fault carrier based upon increases in the minimum wage required by the federal Fair Labor Standards Act.[2] The trial court sustained appellee's preliminary objection in the

1. Act of June 19, 1974, P.L. 489, No. 176, Art. 1, §§ 101 et seq., 40 P.S. §§ 1009.101 et seq. (Supp.1982–83).

2. Act of June 25, 1938, c. 676, § 1, 52 Stat. 1060, as amended, 29 U.S.C.A. § 201 et seq. Section 6 of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 206, provides in relevant part:
   (a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
   (1) not less than $2.65 an hour during the year beginning January 1, 1978, not less than $2.90 an hour during the year beginning January 1, 1979, not less than $3.10 an hour during the year 1980, and not less than $3.35 an hour after December 31, 1980 . . . .

nature of a demurrer and dismissed appellants' complaint. We reverse.

■ On appeals sustaining preliminary objections in the nature of a demurrer, we accept as true the well-pleaded averments of fact contained in the complaint. *Zelik v. Daily News Publishing Co.*, 288 Pa.Super. 277, 431 A.2d 1046 (1981). Upon inspection, the complaint reveals the following facts.

On December 20, 1978, appellant Louis Goebel was struck by an automobile as he walked along Jefferson Avenue in Washington, Pennsylvania. As a result of this accident, Mr. Goebel suffered the fracture of both legs and his skull as well as other severe injuries. At the time of the accident, Mr. Goebel worked an average of 53 hours per month as a custodian for the Farm Credit Associations. He was paid at the then prevailing minimum wage of $2.65 an hour. The accident rendered Mr. Goebel permanently and totally disabled; he will never be able to return to gainful employment of any kind. Appellee, Hartford Accident and Indemnity Company, the Goebels' no-fault carrier, has thus far paid all hospital and medical expenses incurred due to the accident.

The dispute concerns the precise amount of work loss benefits to be paid Mr. Goebel under the No-Fault Act. Hartford commenced paying work loss benefits sometime during 1979 after Mr. Goebel's disability was determined to be permanent.[3] At that time, Hartford paid $153.70 per month based upon Mr. Goebel's average of 53 hours of work per month at the 1979 minimum wage of $2.90 an hour.[4] When, under the Fair Labor Standards Act, the minimum wage rose to $3.10 an hour in 1980 and to $3.35 an

3. The exact dates are not disclosed.

4. The complaint alleges that Mr. Goebel was not subject to any income tax levy due to his age and the size of his income. Neither detail is provided. But because we accept this averment as true, we have no reason to discuss the application of § 206(b) of the No-Fault Act, 40 P.S. § 1009.206(b) (Supp.1982–83), dealing with the deduction of tax savings from the benefits received.

hour in 1981, Mr. Goebel demanded a concomitant increase in his work loss benefits. Hartford refused and Mr. and Mrs. Goebel filed a complaint in equity seeking, 1) an injunction against Hartford's continued refusal to pay the increased amounts, 2) payment of benefits allegedly past due and owing, 3) statutory interest of eighteen percent per annum,[5] and 4) attorney's fees.[6] As mentioned above, Hartford filed a preliminary objection in the nature of a demurrer which the trial court sustained. The court ruled that appellants had no cause of action for increased benefits. The court therefore also found that appellants had no right to an injunction, interest or attorney's fees. The court dismissed the complaint and appellants appealed challenging each of the trial court's conclusions.

■ Initially, we note that we can discover no legal basis upon which Mrs. Goebel can recover. Only Mr. Goebel was injured and Hartford owes any benefits due under the policy of insurance to him. Therefore, the trial court was correct that, as to Mrs. Goebel, "on whose behalf no claim seems to be made," this complaint should be dismissed.

With respect to Mr. Goebel, however, we face a different situation. Appellants rely on the phrase "absent a showing that it [probable annual income] is or would be some other amount" contained in § 205(d). Appellants assert that this language permits them to claim increased work loss benefits from their no-fault carrier when an event, in this instance an increase in the minimum wage, subsequent to the original calculation of their benefits allegedly alters the amount of money the victim would have received had he continued to work. The trial court characterized this argument as "specious" and stated that "[i]f the [General Assembly] had intended to provide for indexing this loss to the cost of living, they could have done so. They didn't." That court also relied upon the speculative nature of the future relations between Mr. Goebel and his employer:

5. 40 P.S. § 1009.106(a)(2) (Supp.1982–83).

6. *Id.* § 1009.107.

> We have no way of knowing that Mr. Goebel's employer
> would have let him continue working 53 hours per month.
> The 53 hours a month may have been arrived at to fit the
> employer's budget for money allocated to custodial servic-
> es....

Additionally, the court opined that "it doesn't make much difference [because] ... in 8.04 years [appellant] will get it all [the $15,000 statutory maximum work loss benefits [7]] anyhow."

This discussion is off the point. The issue is not so broad as indexing to the cost of living. Nor is the court's consideration of a question of fact, the amount of time Mr. Goebel would have worked for his employer under the new wage structure, entirely appropriate in the present procedural posture or pertinent to the question before us. We must here discern the meaning and effect of a given statutory phrase. Because this phrase is not defined in the No-Fault Act, we turn to the Statutory Construction Act [8] and other sources for guidance.

We begin with the proposition that we are "to ascertain and effectuate the intention of the General Assembly," giving full effect, if possible, to each provision in the statute before us. 1 Pa.C.S.A. §§ 1921(a), 1922(2). *See also, Allstate Ins. Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980). The General Assembly is presumed not to have intended any result which is absurd or unreasonable. 1 Pa.C.S.A. § 1922(3). The words and phrases used in legislation are to be construed "according to their common and accepted usage" with technical words to be given their technical meaning. *Id.* § 1903(a). Furthermore, the No-Fault Act is among those enactments which are to be construed liberally. *Id.* § 1928.

7. *Id.* § 1009.202(b)(2).

8. 1 Pa.C.S.A. § 1501 et seq. The legislative history is also of no assistance on this point because § 205 was passed apparently without recorded debate. The legislative history for the No-Fault Act is collected in D. Schrager, *The Pennsylvania No-Fault Motor Vehicle Insurance Act,* Appendix B, pp. 311–502 (1979) [hereinafter cited as Schrager, *Pa. No-Fault Act* ].

To ascertain the intent of the legislature, we look first to the findings and purposes set forth in the Act itself. The General Assembly specifically declared that "the maximum feasible restoration of all individuals injured ... in motor vehicle accidents ... is essential ...."[9] The Act further states that "it is hereby declared to be the policy of the General Assembly to establish ... a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims ...."[10] Restoration of victims by providing basic loss benefits includes assuring "every victim ... recovery of a reasonable amount of work loss."[11] Of course, we are not free to determine on our own the scope of these terms, but we must follow the guide given by the definitions set forth in the No-Fault Act. *Hughes v. Pittsburgh*, 379 Pa. 145, 148, 108 A.2d 698 (1954).

Section 103[12] of the Act sets forth the following pertinent definitions:

"Loss" means accrued economic detriment arising out of the maintenance or use of a motor vehicle consisting of and limited to, allowable expense, work loss, replacement service loss and survivor's loss.

"Loss of income" means gross income actually lost by a victim ....[13]

"Work loss" means:

(A) loss of gross income of a victim as calculated pursuant to the provisions of section 205 of this act; and

(B) [subject to several adjustments not here pertinent].

Section 205 sets forth the method of calculating work loss as follows:

**9.** 40 P.S. § 1009.102(a)(3) (Supp.1982–83).

**10.** *Id.* § 1009.102(b).

**11.** *Id.* § 1009.102(a)(6).

**12.** *Id.* § 1009.103.

**13.** "Loss of income" is also subject to certain reductions not here relevant.

§ 205 Work Loss

(a) Regularly employed.—The work loss of a victim whose income prior to the injury was realized in regular increments shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim sustains loss of income during the accrual period.

(b) Seasonably employed—The work loss of of a victim whose income is realized in irregular increments shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by the number of weeks he normally works; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, the victim was unable to perform and would have performed work during the accrual period but for the injury.

(c) Not employed—The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period.

(d) Definitions—As used in this section: "Probable annual income" means, absent a showing that it is or would be some other amount, the following:

(A) twelve times the monthly gross income earned by the victim from work in the month preceeding the month in which the accident resulting in injury occurs, or the average annual income earned by the victim from work during the years, not to exceed three, preceeding the year in which the accident resulting in

injury occurs, whichever is greater, for a victim regularly employed at the time of the accident;

(B) the average annual gross income earned by the victim from work during the years in which he was employed, not to exceed three, preceeding the year in which the accident resulting in injury occurs, for a victim seasonally employed or not employed at the time of the accident; or

(C) the average annual income of a production or non-supervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs, for a victim who has not previously earned income from work.

"Work week" means the number of days an individual normally works in a seven-day period; "weekly income" means income earned during a work week.

Finally § 106(a)(1) adds the general rule that benefits are payable monthly as expense and loss accrues. It also provides that "loss accrues not when the injury occurs but as allowable expense, work loss, replacement service loss or survivor's loss is sustained." [14]

Further aid is drawn from two cases in which this Court has had an opportunity to apply § 205. In the first, *Dorsey v. Harleysville Mutual Ins. Co.*, 285 Pa.Super. 124, 426 A.2d 1173 (1981), this Court held that a welder, unemployed at the time of his injury in 1975, could collect work loss benefits based upon his average annual income for those three years (1969, 1970 and 1973) in which he had last been employed prior to the accident. In explaining the work loss calculation, Judge Van der Voort mentioned that the calculation was based on the assumption that "... no evidence was introduced by any party to show that the 'probable annual income' would be some other amount." *Id.*, 285 Pa.Superior at 125–127, 426 A.2d at 1174. Thus, at least in dictum, one panel of this Court assumed that the parties to the insurance contract could avoid the impact of the statuto-

**14.** 40 P.S. § 1009.106(a)(1) (Supp.1982–83).

ry formulas by adducing proof to show a different amount of actual loss.

In the second case, *Mattia v. Employers Mutual Companies*, 294 Pa.Super. 577, 440 A.2d 616 (1982), we observed that "[s]trict application of the formula set forth in § 205(a) of the Act does not permit Mrs. Mattia to recoup a 'reasonable amount of work loss'; in fact, it causes an absurd and unreasonable result." The absurdity in that case was that Mrs. Mattia, who had not drawn a salary from her fledgling business, would have recovered no work loss benefits at all because the statutory formulas had no separate category for a person working and not paid. She would have clearly come within one such category had she not shown any initiative and remained among the unemployed. Therefore, this Court departed from the strict application of § 205 and permitted Mrs. Mattia to recover under § 205(c) and (d)(C) because she "had not previously earned income from work." *Id.*, 294 Pa.Superior at 583, 440 A.2d at 619. In essence the Court held that the computation of a claimant's amount of work loss may be based upon events and circumstances that occur *subsequent* to the date of injury and is not limited to events occurring prior to the accident which resulted in the claimant's injury.

Furthermore, in other contexts, Hartford's present argument that the calculation of work loss benefits is to be set at the beginning of the payment of such benefits and not thereafter altered would lead to absurd results. For example, in § 103 of the Act, the definition of loss of income requires deduction for benefits which would have been available from substitute work, whether such work is actually taken or not. Hartford's argument would require it to refrain from reducing a victim's work loss benefits even if that victim returned to work. We believe the legislature intended, by its emphasis on actual loss, that such a deduction from loss of income be made whenever a victim unreasonably fails to undertake such substitute work. Realizing then that a victim's benefits may be *reduced* after the initial calculation of work loss benefits, there is no reason to

hold that a claimant's benefits cannot be *increased* by the occurrence of events subsequent to his injury that may result in an actual increased loss of income. The burden on an insurer is no greater in adjusting calculations for an increase than in adjusting for a reduction.

We thus arrive at the conclusion that § 205 is not to be applied in such a rigorous manner that the purposes of the No-Fault Act are lost to sight. Section 205 offers a framework within which each case may be settled or decided. Indeed, the specific language at issue seems especially well adapted to assuring the parties that the special circumstances of their case will not be disregarded in favor of some preordained result. As observed by one commentator:

> The statutory definition of [probable annual income] for the regularly, occasionally and never-employed claimant is always subject to proof that in any individual's case his "probable annual income" is higher or lower . . . .

> *   *   *   *   *   *

> It is important to recall that the formulas identified in Section 205 for "probable income" are not controlling. There may be a showing that "it is or would be some other amount." Thus, the high school student injured the summer following his graduation (when presumably he would be entering the full time labor force), would insist that his "probable annual income" was higher than his historic earnings record would disclose. Conversely, the 70 year old housewife injured just prior to a holiday period when, in previous years, she had been employed, might have no "probable annual income" since it would be urged that she would not have performed any work. In every case, counsel must be alert to proof of a higher or lower probable annual income figure than identified under the statutory definition.[15]

Permitting a claimant or insurer to adduce proof that benefits owed are different than those provided under the formulas of § 205 would serve the purposes and effectuate

15. Schrager, *Pa. No-Fault Act*, §§ 1:9.1 and 1:9.2, pp. 86–87, 90.

the intent of the General Assembly. Such an interpretation would insure that benefits were paid only for losses and expenses actually sustained.[16] It would appear that an increase in the minimum wage could conceivably increase that amount which is actually lost if the claimant was employed in an industry to which the minimum wage provisions of the FLSA applied and claimant's wages would have gone up but for his injuries having kept him out of the work force. *See Erie Ins. Exchange v. Roule,* 279 Pa.Super. 40, 420 A.2d 733 (1980) (victim remains eligible for work loss benefits during strike of former employer because his injuries, not the strike, prevented him from accepting any available work).

■ Allowing benefits to be affected by subsequent events also comports with the "accrual" policy established by § 106. Instead of attempting to calculate all the possible elements of damages and loss which a victim suffers and paying for them in advance in one lump sum, expenses and losses are paid out by the insurer as they are incurred by the victim. There is no speculation as to what medical attention will be necessary, how much these costs will increase over time nor how much an individual would have earned over his lifetime. The Act's wait-and-see approach is thus both more definite and more accurate. We conclude that this policy supports permitting the fluctuation of work loss benefits in much the same manner. Indeed, allowing reconsideration of the work loss benefits will prevent unjust enrichment of victims who suddenly "recover" as well as more complete short-term support of those victims who are not so fortunate. To follow appellee's argument would put victims in a "Catch-22": they could not claim wages actually lost at the time of the initial calculation of these benefits because the loss had not yet accrued; but appellee would not permit them to claim such losses at any other date because the Act does not specifically allow for a recalculation of work loss benefits. We believe that the No-Fault

**16.** *See* the definition of "Loss of income," quoted above at text accompanying n. 13.

Act requires recalculation of benefits, when requested by the claimant, based upon the twin principles of accrual and actual loss, the same being of course, subject to proof. Therefore we hold that, circumscribed by the time limits for claiming and recovering no-fault benefits imposed by § 106 and by the various ceilings imposed upon the amount of benefits payable under § 202, any party to the insurance contract can require an alteration to be made in the payment schedule upon a showing that the claimant's "probable annual income ... is or would be some other amount" than that previously calculated.[17]

We would be chary of so interpreting § 205 if we believed that such an interpretation would substantially clog our already overburdened judicial system. For several reasons, however, we do not believe we have opened the floodgates. The No-Fault Act contains heavy interest [18] and attorney's fees [19] provisions which should act to inhibit the assertion of unmeritorious claims. Furthermore, in cases of greater merit, it would appear that the statute casts upon the party wishing to depart from the standard formula the burden of showing the propriety of such departure. These claims necessarily concern events which either did not or will not occur. Thus, the ephemeral quality of the issue is itself a substantial barrier to the success of such a claim. To insure that such claims are not based upon bare assertions and speculation, courts could rightfully subject the proof in cases such as these to close scrutiny.

17. The trial court observed that it "doesn't make much difference [because] ... in 8.04 years [appellant] will get it all anyway." However, we note that the value to the claimant of the $15,000 maximum work loss recovery decreases as the period over which it is paid increases. We believe it best left to the parties involved to assess their own needs and desires and to decide whether the risk of extra cost in bringing suit offsets the opportunity to obtain the benefits at an earlier date or, in the case of an insurer, whether those costs outweigh the opportunity to retain the funds for a longer period of time.

18. 40 P.S. § 1009.106(a)(2) (Supp.1982–83).

19. *Id.* § 1009.107.

■ We wish to emphasize that we do not decide whether the General Assembly intended to provide for indexing work loss benefits to the cost of living. Rather, we decide only that an increase in the minimum wage may provide an opportunity for a claimant to show that his or her "probable annual income ... is or would be some other amount" than that provided by statutory formula. However, we do not mean to imply that the minimum wage mandated by the Fair Labor Standards Act is an automatic floor on the amount of work loss benefits payable to a victim. As we stated above, an amount other than that prescribed by formula must be "shown" with the burden of making that showing placed squarely on the shoulders of the party seeking the adoption of that other amount.

■ Having stated this much, however, we must still explore the proper disposition of this appeal. In light of the foregoing discussion, we believe that an injunction will not lie. Appellants have merely alleged that Hartford owes additional benefits. We have stated, in many different ways, that this issue is not etched in stone. The insurer may yet return with proof that the FLSA does not apply or that Mr. Goebel would not have been working quite so many hours or that he would not have been working at all. Furthermore, Hartford is not precluded from bringing such proof forward at a later time. We, therefore, conclude that the trial court properly sustained Appellee Hartford's preliminary objection pursuant to Pa.R.C.P. No. 1509(c) that plaintiff's remedy is one at law.

■ This determination does not end the matter, however, for Rule 1509(c) requires that if such a preliminary objection is sustained, "the court shall certify the action to the law side of the court." Because we have ruled that the trial court erred in concluding that, as to Louis Goebel, the complaint fails to state a cause of action, it was also error not to transfer the action to the law side.[20]

20. Our disposition of these issues renders it inappropriate for us to pass upon Mr. Goebel's claim for interest and attorney's fees. Resolu-

The order of the trial court is affirmed insofar as it dismissed the complaint as to Helen Goebel and insofar as it sustained Hartford's preliminary objection as to the adequacy of a remedy at law. That part of the order dismissing the complaint as to Louis Goebel for failure to state a cause of action is reversed and the case is remanded for the entry of an order transferring the case to the law side for further proceedings not inconsistent with this opinion.

Jurisdiction is relinquished.

tion of these claims should be made in the first instance by the trial court after resolving Mr. Goebel's primary claim for benefits.