469 A.2d 199

**Joanne FOX, Administratrix of the Estate of Shirl Morrissey, Deceased and Joanne Fox, in her own right**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 18, 1983.

Filed Nov. 18, 1983.

Petition for Allowance of Appeal Granted May 25, 1984.

Richard T. Abell, Philadelphia, for appellant.

Stephen C. Josel, Philadelphia, for appellee.

Before CAVANAUGH, ROWLEY and HOFFMAN, JJ.

ROWLEY, Judge:

This is an appeal from an order of the trial court granting appellee's motion for summary judgment and awarding the estate of the minor decedent work loss benefits in the amount of $15,000.00 plus eighteen percent annual interest under the Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, Art. I et seq.; 40 P.S. §§ 1009.101 et seq. (Supp.1983–84).

Appellee Joanne Fox is the administratrix of the estate of Shirl Morrissey who died from injuries sustained when she was struck by an automobile driven by an insured of Appellant, State Farm Mutual Automobile Insurance Company. At the time of her death, the decedent was either three or five years old; the record is not clear on the point. Appellee presented a claim to State Farm for medical expenses,[1] funeral costs,[2] and survivor's[3] and work loss[4] benefits under the No-Fault Act. State Farm paid the first two items, but denied liability for survivor's loss and work loss benefits. The claim for survivor's loss benefits was later abandoned. Appellee commenced this action against

1. No-Fault Act Sections 103 and 202(a), 40 P.S. §§ 1009.103 and 1009.202(a) (Supp.1983–84).

2. Id.

3. Id., §§ 103, 202(d); 40 P.S. §§ 1009.103, 1009.202(d) (Supp.1983–84).

4. Id., §§ 103, 202(b) and 205; 40 P.S. §§ 1009.103, 1009.202(b) and 1009.205 (Supp.1983–84).

State Farm by filing a complaint in assumpsit alleging that State Farm was liable to the estate for the payment of No-Fault work loss benefits. Following the filing, by State Farm, of an answer and new matter denying liability, appellee filed a motion for summary judgment. The trial court granted the motion, stating that the maximum work loss benefits of $15,000.00, provided for by the Act were due and payable in twelve equal monthly installments commencing thirty days after the date of the decedent's death. The court also directed State Farm to pay the statutory rate of interest of eighteen percent per year. This appeal followed.

State Farm raises five issues for our consideration: (1) May the estate of a minor collect post-mortem work loss benefits under the No-Fault Act although the child never worked and there is no showing of dependency? (2) "[I]f any No-Fault wage loss benefits must be paid are the work loss payments due without regard to the time when the particular decedent would have had a probable annual income?" (3) Is summary judgment an appropriate method of determining the amount of No-Fault work loss benefits when the decedent's probable annual income is in dispute? (4) "Is the Pennsylvania Supreme Court decision in *Allstate Insurance Company v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), to be applied retroactively to a case where the death occurred prior to the decision of the Supreme Court?" (5) If any benefits are or have been due, what is the proper method of calculation of interest in this case?

## I.

The first and fourth issues raised by State Farm have been previously raised and decided adversely to it. In *Allstate Insurance Company v. Heffner, supra,* the Supreme Court of Pennsylvania held that the estate of a deceased adult victim of a motor vehicle accident was entitled to recover work loss benefits under the Act. In *Freeze v. Donegal Mutual Insurance Co.*, 301 Pa.Super. 344, 447 A.2d 999 (1982), allocatur granted 11/5/82, an *en banc*

panel of our court, following *Heffner,* held that the estate of a deceased eleven year old with no work history was entitled to recover work loss benefits. The Court said that there need be no showing of dependency because that issue is "more properly a question concerning survivor's loss benefits." *Id.,* 301 Pa.Superior Ct. at 354 n. 9, 447 A.2d at 1004 n. 9. Furthermore, there is no necessity that the deceased have an actual work history because § 205(c) of the Act, 40 P.S. § 1009.205(c) (Supp.1983–84), specifically sets forth a formula by which work loss benefits may be calculated for "a victim who is not employed when the accident resulting in injury occurs." *See also: Hartleb v. Ohio Casualty Insurance Co.,* 305 Pa.Super. 231, 451 A.2d 506 (1982); *Miller v. United States Fidelity and Guaranty Co.,* 304 Pa.Super. 43, 450 A.2d 91 (1982), allocatur granted, and *Chesler v. Government Employees Insurance Co.,* 302 Pa.Super. 356, 448 A.2d 1080 (1982), allocatur granted November 5, 1982.

■ As to State Farm's claim that *Heffner* should not be applied retroactively to accidents which occurred prior to the decision in that case, our Court, in *Baker v. Aetna Casualty & Surety Co.,* 309 Pa.Super. 81, 454 A.2d 1092 (1982), held otherwise. *Also see: Shomper v. Aetna Life & Casualty Co.,* 309 Pa.Super. 97, 454 A.2d 1101 (1982); *Keaten v. Aetna Life & Casualty Insurance Co.,* 309 Pa.Super. 101, 454 A.2d 1102 (1982); *Thomas v. Aetna Casualty & Surety Co.,* 309 Pa.Super. 105, 454 A.2d 1105 (1982); *Freeman v. Allstate Insurance Co.,* 309 Pa.Super. 108, 454 A.2d 1106 (1982); *Giles v. Allstate Insurance Co.,* 309 Pa.Super. 111, 454 A.2d 1108 (1982); *Rittner v. Aetna Life & Casualty Insurance Co.,* 309 Pa.Super. 114, 454 A.2d 1109 (1982). As Judge Johnson stated for the court in *Baker:*

> [I]n *Heffner* we decided an issue of statutory construction. We created no new right, and made no change in the law.
>
> 309 Pa.Super. at 91, 454 A.2d at 1097.

For these reasons, the trial court correctly held that appellee was entitled to claim work loss benefits from appellant and, when the claim was denied, commence an action to compel such payments.

## II.

Appellant next argues that summary judgment was improperly granted because there is a genuine issue as to a material fact on the record before us. We agree.

It is important to note that *Heffner*, *Freeze* and their progeny do *not* stand for the proposition that payment of the statutory maximum $15,000.00 work loss benefits to the estate of a deceased minor is automatic once the death of the child and the identity of the administrator of the estate are established. Those decisions may rightfully be understood as establishing the right of estates of deceased victims of motor vehicles accidents to submit, and be given the opportunity to prove, a claim for No-Fault work loss benefits. Averments of fact which properly invoke the rule of those cases are not in themselves sufficient to establish entitlement to such an award. Such averments show only that the party before the court is a proper claimant.

While § 301(a) of the No-Fault Act states that the concept of "tort liability is abolished," 40 P.S. § 1009.301(a) (Supp. 1983–84), this Court has held that other portions of the Act continue to require that claimants prove certain tort-type elements of their claim as a prerequisite to recovery. For example, under §§ 103 and 301 of the Act, a claimant must show that the injuries for which benefits are claimed have "arise[n] out of the maintenance or use of a motor vehicle." 40 P.S. §§ 1009.103 (definition of "Loss"), 1009.301(a). Thus, the Act has been held to require a showing of "but for" causation. *Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 452 A.2d 735 (1982); *Erie Insurance Exchange v. Eisenhuth*, 305 Pa.Super. 571, 451 A.2d 1024 (1982); *Rife v. State Farm Mutual Automobile Insurance Co.*, 304 Pa.Super. 359, 450 A.2d 720 (1982).

Similarly, in cases dealing with survivor's loss under §§ 103 and 202(d) of the No-Fault Act, 40 P.S. §§ 1009.103 and 1009.202(d) (Supp.1983–84), this Court has ruled that "a party that has qualified as a 'survivor' must still plead and prove the loss ..." incurred by reason of a motor vehicle accident. *McClaine v. Allstate Insurance Co.*, 317 Pa.Super. 154, 157 n. 2, 463 A.2d 1131, 1132 n. 2 (1983). In *Wercoch v. Liberty Mutual Insurance Co.*, 287 Pa.Super. 45, 429 A.2d 712 (1981), the Court ruled that the trial court improperly awarded survivor's loss benefits to decedent's spouse without having required the spouse to prove the losses she sustained. Mrs. Wercoch's status as a spouse did "not relieve her of the burden of proving the damages provided by the Act for survivor's loss." *Id.*, 287 Pa.Superior Ct. at 52, 429 A.2d at 715. Similarly, in *Chesler v. Government Employers Insurance Co.*, 302 Pa.Super. 356, 448 A.2d 1080 (1982) (en banc), it was observed that the status of the claimant under the Act as a proper party to collect no-fault benefits "is an issue separate and apart from *the amount of ... benefits ... available ...*" to that claimant. *Id.*, 302 Pa.Superior Ct. at 363 n. 14, 448 A.2d at 1083–1084 n. 14.

Similar logic compels the conclusion that claimants qualifying under the decisions in *Heffner* and *Freeze* as parties who may rightfully claim work loss benefits under the Act, must likewise bear the burden of proving to a reasonable certainty that the decedent would have earned income and the amount thereof, at least up to the maximum amount provided by the Act. In *Freeze v. Donegal Mutual Insurance Co.*, 301 Pa.Super. at 354–355, 447 A.2d at 1004–1005, our court set forth the following method of determining the amount of work loss sustained by a deceased minor victim of a motor vehicle accident:

> Finally, although the "deceased victim" in the instant case is a minor child who had never worked, we see no difficulty in calculating his work loss. Section 205(c) sets out the method by which the work loss of one not employed at the time of the accident is to be calculated:

(c) Not employed.—The work loss of a victim who is not employed when the accident resulting in injury occurs shall be calculated by:

(1) determining his probable weekly income by dividing his probable annual income by fifty-two; and

(2) multiplying that quantity by the number of work weeks, or fraction thereof, if any, the victim would reasonably have been expected to realize income during the accrual period;

40 P.S. § 1009.205(c). Because the victim was never employed the "probable annual income" referred to in Section 205(c)(1) will be "the average annual gross income of a production or nonsupervisory worker in the private nonfarm economy in the state in which the victim is domiciled for the year in which the accident resulting in injury occurs" as required by Section 205(d)(C). *See Marryshaw v. Nationwide Mut. Ins.*, 13 Pa.D. & C.3d 172 (1979) [affirmed, 306 Pa.Super. 233, 452 A.2d 530 (1982)]. In addition, it has been suggested that the fact that the victim never worked creates a problem about determining the proper "accrual period" to be utilized in fixing the work loss amount; we think the existence of such a problem illusory. The "accrual period," instantly, the number of years the deceased victim would have worked had he survived the accident, can be readily established by reference to actuarial tables and other relevant statistical compilations. This is true even though the deceased victim was never actually given the chance to work and that, therefore, we cannot precisely fix the date of his entry into the working world. (Footnotes omitted.)

Appellee must therefore present evidence to establish the likelihood of Shirl's having sustained a "work loss" as well as the necessary elements to prove the amount of the loss. Appellant should be given an opportunity to rebut such evidence by presenting contradictory evidence if such exists.

We have little doubt that in the vast majority of cases, recovery can be had at no great cost and with no arduous

effort on the part of the estate. Reference to income data for the various geographical regions and socioeconomic groups, actuarial tables and other statistical studies will reveal in short order whether or not an individual would probably have earned more than the statutory work-loss maximum of $15,000.00 in his or her lifetime. Most healthy individuals, regardless of their level of education, would be likely to earn income far in excess of that amount. Furthermore, as the deceased minor's age decreases, any required specificity of proof would also be reduced. However, some showing of good health, working-life span and possible or probable earnings, but for the victim's death due to the accident, *is* required.

In light of the foregoing, we conclude that summary judgment was improperly granted in this case.

Summary judgment is made available by Pa.R.C.P. 1035 ... when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. This severe disposition should only be granted in cases where the right is free from doubt. To determine the absence of a genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of the judgment.... The moving party bears the burden of demonstrating clearly that there is no genuine issue of fact.

*Acker v. Palena,* 260 Pa.Super. 214, 218–219, 393 A.2d 1230, 1232 (1978) (citations omitted).

*See also: First Mortgage Company of Pennsylvania v. McCall,* 313 Pa.Super. 54, 459 A.2d 406 (1983). Appellee has submitted no evidence of any kind to support the motion for summary judgment or to demonstrate clearly that there is no genuine issue of fact regarding the amount of work loss benefits to which the estate may be entitled. There are no affidavits, exhibits, depositions, admissions, interrogatories or anything else of an evidentiary nature.

The pleadings disclose only that State Farm has paid funeral and medical expenses as defined by the Act. State Farm has specifically denied any other liability. There is nothing of record to show the deceased's physical and mental condition prior to the accident that caused her death, that she probably would have sustained an actual work loss within the meaning of the Act, or how much that work loss might have been. We do not know how long Shirl might have worked or how much she might have earned or that this sum was equal to or greater than the maximum allowable under the Act. It appears that nearly every material fact is as yet still the subject of genuine dispute and that neither party is as yet clearly entitled to judgment as a matter of law.

We will therefore reverse the order of the trial court granting summary judgment in favor of appellee.

### III.

Although our determination that summary judgment should not have been granted is in and of itself sufficient to require a remand, in the interests of judicial economy and for the guidance of the parties we will also consider the second issue raised by State Farm and decided by the trial court.

State Farm argues that no benefits could presently be due because No-Fault benefits are payable only as actual economic detriment occurs. Such detriment would occur, it is argued, only at such time as the decedent would have experienced a probable annual income. The trial court held, however, that the work loss accrues in these cases "at the time of death." We agree with the trial court.

Section 106(a)(1) of the No-Fault Act, 40 P.S. § 1009.-106(a)(1) (Supp.1983–84), states that "[l]oss accrues not when injury occurs but as allowable expense, work loss, replacement services loss, or survivor's loss is sustained." State Farm recognizes that formulas for the calculation of work loss are set forth in § 205 of the Act, 40 P.S. § 1009.205 (Supp.1983–84), including one formula for the

calculation of such loss if the victim is "not employed when the accident resulting in injury occurs...." § 205(c). However, State Farm argues that, under § 205(d), it is permitted to show that the decedent's "probable annual income ... is or would be some other amount" than that prescribed by the formula contained in the Act. In this case, the minor decedent was admittedly not employed nor, contends State Farm, would she have become employed for the forseeable future. Therefore, State Farm concludes, "[u]ntil such time as the decedent actually has a probable annual income, no income has been lost and no work loss [has] occurred." Brief for Appellant at 19. At oral argument, counsel for appellant suggested that it would not be until the decedent would have reached the age of eighteen or, perhaps, even twenty-one that such actual probable annual income could be established.

Such an argument is not entirely without logical cohesion or force. Our court has recently held that an alteration of the minimum wage rate under the federal Fair Labor Standards Act, 29 U.S.C.A. §§ 201 et seq., may be grounds upon which a claimant may require an insurer to adjust the rate at which work loss benefit payments are made. *Goebel v. Hartford Accident And Indemnity Co.*, 312 Pa.Super. 15, 458 A.2d 212 (1983). We there held that, circumscribed by the time limits and maximum dollar amounts placed on work loss benefits by the No-Fault Act, "any party to the insurance contract can require an alteration to be made in the payment schedule upon a showing that the claimant's 'probable annual income ... is or would be some other amount' " than that calculated under one of the formulas of § 205. We stated that "this issue is not etched in stone" but that either the claimant or the insurer may come forward with proof sufficient to support a departure from the statutory formulas, recognizing at the same time that "the ephemeral quality of the issue is itself a substantial barrier to the success of such a claim." Our ruling was "based upon the twin principles of accrual and actual loss" embodied in Sections 103 and 106 of the No-Fault Act, as

well as on the language of § 205(d) upon which State Farm here relies. *Id.*, 312 Pa.Superior Ct. at 26–28, 458 A.2d at 217–218.

However, we do not believe that our decision in *Goebel* requires the result sought in this case by State Farm. The factor distinguishing the two cases is that in *Goebel* the claimant remained alive while the victim in the present case has died. It is true that in *Goebel* "the accident rendered Mr. Goebel permanently and totally disabled; he will never be able to return to gainful employment of any kind." Id., 312 Pa.Superior Ct. at 18, 458 A.2d at 213. However, permanent and total disability is not the equivalent of death under the No-Fault Act. While the claimant lives, medical advances and the human body's own sometimes miraculous regenerative powers hold out the possibility, however slim, that the motor vehicle accident victim may recover. Furthermore, therapy may open to an injured person some new door leading to a field of gainful activity which had hitherto been unnoticed or ignored. Finally, we must note that there are those few individuals who will attempt to defraud an insurer by claiming disability although they are capable of performing available substitute work if not fully able to return to their former employment.

In the context of an injury not resulting in death, application of the principles of accrual and actual loss so as to delay the payment of benefits serves the purposes set forth in § 102 of the Act, 40 P.S. § 1009.102 (Supp.1983–84), namely, to provide "prompt and adequate basic loss benefits" intended to "compensate" or "restore" those injured in motor vehicle accidents or their survivors.

Instead of attempting to calculate all the possible elements of damages and loss which a victim suffers and paying for them in advance in one lump sum, expenses and losses are paid out by the insurer as they are incurred by the victim. There is no speculation as to what medical attention will be necessary, how much these costs will increase over time nor how much an individual would

have earned over his lifetime. The Act's wait-and-see approach is thus more definite and more accurate.

*Goebel v. Hartford Accident And Indemnity Co.*, 312 Pa.Super. at 26, 458 A.2d at 217.

The No-Fault Act is thus designed to forestall the possibility that the compensatory benefits would go beyond the intended maintenance or restoration of the injured claimants and their families to become a subsidization or improvement in economic condition.

In stark contrast, where the motor vehicle accident victim dies as a result of the accident, the uncertainty inherent in the recovery from bodily injury is entirely eliminated. The decedent will never return to work of any kind regardless of medical advances. There is no possibility that future events of any sort will alter the amount of damage done or the amount of losses sustained. The victim's death closes the books of account, supplying all the certainty sought through the application of the principles of accrual and actual loss. The proof of how much earnings have been lost becomes static; no future events will alter the accuracy of the statistical prediction of such loss. In short, we hold that the economic detriment necessary to support a claim of "loss" and "work loss", as defined in § 103 of the No-Fault Act, accrues within the meaning of those definitions and within the meaning of § 106(a)(1), at the moment death occurs due to the operation or maintenance of a motor vehicle.

We pause to observe that if we were to hold as appellant asks, the result would be to impede progress toward achieving the legislatively defined goal of a "low-cost, comprehensive and fair system of compensating and restoring motor vehicle accident victims and the survivors of deceased victims...." § 102(a)(4). Appellant's position would also require us to disregard the General Assembly's desire that payment of benefits be "prompt". § 102(b). Appellant's desire to have the appellee and those in similar circumstances come forth with proof that a decedent child would have had "an actual probable income" would impose a burden to

bring forth a substantially higher order of proof not required of other litigants in like circumstances. State Farm would thus in effect have us significantly impair the availability of work loss benefits to the estates of deceased minor children. Such a result would implicitly overrule *Freeze v. Donegal Mutual Insurance Co., supra*, a course which we have neither the desire nor the power to take.[5]

The other result following from State Farm's argument is that, at best, No-Fault benefits would not be paid for fifteen years or more. Such delay certainly cuts against the grain of the General Assembly's desire to require "prompt" payment of basic loss benefits. Furthermore, this waiting period would substantially delay proceedings in the Orphans' Court Divisions of the Commonwealth's trial courts, leaving a large number of estates open and unsettled for long periods of time. Such cases could clog court dockets and impose a difficult supervisory or case-management task on the courts and practitioners alike, without any concomitant gain in efficient use of resources, fairness or justice. Such delay would also materially decrease the value of the benefits paid, in effect denying the full amount of benefits the legislature provided for in its estimation of fair and adequate restoration. We cannot find in the Act itself nor in the legislative history any foundation for requiring the extremely negative consequences attendant upon adoption of appellant's position. Finally, because the legislature is presumed not to intend an unreasonable result, 1 Pa.C.S.A. § 1922(3), and because we believe the results advocated by State Farm are unreasonable, we do not adopt the position advanced by State Farm.

■ Finally, appellant has not challenged that part of the trial court's order stating that the sum due appellee would be considered as having been due in twelve equal monthly installments of $1,250.00 each. However, an en banc panel of our Court, in *Antanovich v. Allstate Insurance Compa-*

5. There are substantial doubts concerning the constitutionality of denying such a recovery. *See: Heffner v. Allstate Insurance Co.,* 265 Pa.Super. 181, 191–193, 401 A.2d 1160, 1164–1165 (1979).

*ny,* 320 Pa.Super. ——, 467 A.2d 345 (1983), held that "post-mortem work loss benefits are to be paid in a lump sum." Thus, assuming that the estate proves that some work loss occurred in accordance with *Freeze v. Donegal Mutual Insurance Co., supra,* the insurer's obligation is to pay the loss in one lump sum rather than in installment payments.

For all of the foregoing reasons, the order of the trial court granting summary judgment in favor of appellee is reversed and the case is remanded for proceedings not inconsistent with this opinion.[6]

Jurisdiction is not retained.

---

**6.** Because of our disposition of this case, we will not consider the propriety of the interest awarded by the trial court. However, at oral argument, counsel for both parties had reached agreement as to how the interest should have been calculated.